Galen T. Shimoda (Cal. State Bar No. 226752)
Justin P. Rodriguez (Cal. State Bar No. 278275)
**Shimoda Law Corp.**
9401 East Stockton Blvd., Suite 200
Elk Grove, CA 95624
Telephone: (916) 525-0716
Facsimile: (916) 760-3733
Email: jrodriguez@shimodalaw.com
       attorney@shimodalaw.com

Attorneys for Plaintiff JARED ACOSTA

# UNITED STATES EASTERN DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED ACOSTA,<br><br>  Plaintiff,<br><br>  vs.<br><br>EVERGREEN MONEYSOURCE MORTGAGE COMPANY, a Washington Corporation; and DOES 1 to 100, inclusive,<br><br>  Defendants. | Case No. 2:17-CV-00466-KJM-DB<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Failure to Provide Paid Rest Periods<br>2. Waiting Time Penalties<br>3. Failure to Provide Accurate Wage Statements<br>4. Private Attorney General Act<br>5. Unfair Competition<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JARED ACOSTA ("Plaintiff"), an individual, hereby files this First Amended Complaint on behalf of himself and similarly situated employees against Defendants EVERGREEN MONEYSOURCE MORTGAGE COMPANY, a Washington Corporation, and DOES 1 to 100 (hereinafter collectively referred to as "Defendants"). Plaintiff is informed and believes, and on the basis of that information and belief, alleges as follows:

## INTRODUCTION

1. This is a class action and Private Attorneys General Act lawsuit brought by Plaintiff seeking unpaid wages, statutory penalties, and civil penalties for violations of the California Labor Code and restitution under the California Business & Professions Code.

**PARTIES**

2. Plaintiff JARED ACOSTA is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a resident of the State of California.

3. Plaintiff is informed and believes, and thereupon alleges, that EVERGREEN MONEYSOURCE MORTGAGE COMPANY is now and/or at all times mentioned in this Complaint a Washington Corporation and the owner and operator of an industry, business and/or facility licensed to do business and actually doing business in the State of California.

4. DOES 1 through 100 are affiliates, subsidiaries and related entities and the alter egos of Defendants, corporate or otherwise, who participated in and are liable for the actions herein alleged. Plaintiff will seek to amend this Complaint to allege the true names and capacities of these DOE Defendants when they are ascertained. At all times mentioned herein, each Defendants was the agent or employee of each of the other Defendants and was acting within the course and scope of such agency or employment. The Defendants are jointly and severally liable to Plaintiff.

5. Defendants, and each of them, are now and/or at all times mentioned in this Complaint, were members of and/or engaged in a joint employment, joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint employment, joint venture, partnership, and common enterprise.

6. Defendants proximately caused Plaintiff to be subjected to the unlawful practices, wrongs, complaints, injuries, and/or damages alleged in this Complaint.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Pursuant to 28 U.S.C. § 1367, Plaintiff also invokes the Court's supplemental jurisdiction over Plaintiff's state law claims. All federal and state law claims alleged herein arise out of a common nucleus of operative facts, and Plaintiff would normally be expected to try such claims in one proceeding.

8. Intradistrict Assignment. Venue is proper pursuant to 28 U.S.C. §§ 84(b), 1391(b), and 1446 in that the acts giving rise to Plaintiff's claims occurred within Sacramento County. For this same

reason, and pursuant to Local Rule 120(d), the action shall be commenced at the United States District Court sitting in Sacramento, California.

9. Plaintiff has sought permission pursuant to Labor Code section 2699 *et seq.* to pursue the claims set forth in this Complaint against Defendants as a Private Attorney General on behalf of himself and other similarly situated employees. Pursuant to California Labor Code section 2699.3, Plaintiff gave written notice via online submission to the Labor and Workforce Development Agency ("LWDA") on approximately November 16, 2016. November 16, 2016 notice provided facts and legal basis for his claims within the notice to the LWDA on Counts one through five under the Private Attorneys General Act cause of action. Plaintiff also submitted the $75.00 filing fee. The November 16, 2016, notice was also sent via certified mail to Defendants on the same day. Defendants provided a reply letter to the LWDA, via online submission, on approximately December 12, 2016. Plaintiff thereafter sent the LWDA a response letter on approximately December 27, 2016, via online filing and sent a copy certified mail to Defendants on December 29, 2016. On March 21, 2017, Plaintiff filed an amended PAGA notice via online filing with the LWDA to include additional related facts and theories to support the alleged violations and add Counts six and seven under the Private Attorneys General Act Cause of Action. A copy of the March 21, 2017 notice was also sent via certified mail to Defendants on the same day. Plaintiff is informed and believes that, to date, the LWDA has not provided any response to Plaintiff's or Defendants' notice correspondence. Accordingly, Plaintiff is informed and believes that he has exhausted all administrative remedies pursuant to the Private Attorneys General Act ("PAGA") and may bring this action on behalf of himself and all similarly situated employees. *See* Cal. Lab. Code § 2699.3(a)(2)(A), (c)(3); *Caliber Bodyworks, Inc., v. Sup. Ct.*, 134 Cal.App.4th 365, 383 n.18, 385 n.19 (2005).

## CLASS ALLEGATIONS

10. Plaintiff brings the First, Second, Third, and Fifth Causes of Action, on behalf of himself and all others similarly situated, as a class action pursuant to Federal Rules of Civil Procedure 23. The class and/or subclasses that Plaintiff seeks to represent is composed of and defined as follows (also referred to sometimes as "Similarly Situated Employees"):

//

    (1) All of Defendants' California employees, except for those classified as outside sales employees, who were paid by commissions only or commissions in conjunction with a draw against commissions;

    (2) All of Defendants' California employees who entered into agreements prohibiting their entitlement to receive accrued vacation and/or sick leave benefits and/or worked in a job classification that prohibited their entitlement to receive accrued vacation and/or sick leave benefits; and

    (3) All of Defendants' California employees who worked under the job classification Loan Originator, including, but not limited to, Loan Officers, Assistant Loan Officers, Assistant Loan Officers, Originating Branch Managers, and Originating Regional Managers, who were paid by commissions only or commissions in conjunction with a draw against commissions.

11. This action has been brought and may be properly maintained as a class action, pursuant to the provision of Federal Rules of Civil Procedure 23, because there is a well-defined community of interests in the litigation and the proposed class is easily ascertainable.

    (a) <u>Numerosity</u>: The Plaintiff Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of class members is unknown to the Plaintiff at this time, Plaintiff is informed and believes that Defendants have employed more than 50 individuals falling within the above stated class and/or subclass definitions. As such, joinder of all members of the class is not practicable.

    (b) <u>Common Questions Predominate</u>: Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over questions that affect only individual members of the class. These common questions of law and/or fact include, without limitation, the following:

        (1) Whether Defendants had a policy and/or practice of paying putative class members on a commission only basis or a commission in conjunction with a draw;

        (2) Whether Defendants had a policy and/or practice of utilizing agreements that prohibited putative class members from accruing vacation, PTO, or sick leave;

//

      (3)     Whether Defendants had a policy and/or practice of failing to separately compensate putative class members for rest periods, sick leave, vacation, or PTO;

      (4)     Whether Defendants had a policy and/or practice of designating commissions being earned upon a loan being closed for putative class members;

      (5)     Whether Defendants had a policy and/or practice of imposing a funding requirement for the payment of earned commissions;

      (6)     Whether Defendants had a policy and/or practice in place to provide rest periods to Plaintiffs;

      (7)     Whether Defendants had a policy and/or practice in place to compensate Plaintiffs for rest periods;

      (8)     Whether Defendants provided Plaintiffs with wage statements that did not state the full name of the legal entity that was the employer;

      (9)     Whether Defendants issued paystubs that did not comply with California Labor Code section 226;

      (10)    Whether Defendants paid all wages, due and owing, to putative class members at the time of their termination or separation from employment;

      (11)    Whether Defendants had a policy and/or practice of failing to pay putative class members for all commission wages on loans funded within sixty days of the separation date;

(c)    <u>Typicality</u>: Plaintiff's claims are typical of the claims of Plaintiffs.  He also sustained damages arising out of Defendants' common course of conduct in violation of the law as complained of herein.  As a result, each putative class member will have the same basis for unpaid wage claims as does Plaintiff.

(d)    <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the members of the putative class.  For all relevant times, Plaintiff resided in California, worked for Defendants in California, and is an adequate representative of the putative class as he has no interests that are adverse to those of absent class members.  Additionally, Plaintiff has

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**

retained counsel who has substantial experience in complex civil litigation and wage and hour matters.

(e) <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of the controversy since individual joinder of all members of the class is impracticable. Class action treatment will permit a larger number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as damages suffered by each individual member of the class may be relatively small, the expenses and burden of the individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, and an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

12. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## **GENERAL ALLEGATIONS**

13. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 12 as though fully set forth herein.

14. Plaintiff worked for Defendants in California from approximately September 2015 to October 19, 2016 as a Loan Originator. From approximately September 16, 2015 to November 16, 2015, Plaintiff worked under a compensation agreement that paid a salary of minimum wages as a draw against commissions earned. Commissions were earned upon their being considered closed by Defendants. Additionally, as a result of being classified as a Loan Originator, which Plaintiff is informed and believes includes several job titles including Loan Officer, Plaintiff's compensation agreement prohibited any entitlement to receive accrued paid vacation and/or paid sick leave benefits.

15. From approximately November 16, 2015 to the end of his employment, Plaintiff worked under a different, but similar compensation agreement. Under this new compensation agreement,

Plaintiff was paid a salary of minimum wages and overtime as a draw against commissions earned. Commissions were still earned upon the loans being considered closed by Defendants. The new compensation agreement continued to prohibit any entitlement to receive accrued paid vacation and/or paid sick leave benefits as a result of Plaintiffs classification as a Loan Originator. These agreements were standardized and used by Defendants to employ the Similarly Situated Employees, including the terms for payment by draws against commissions and prohibiting any entitlement to receive accrued paid vacation and or paid sick leave benefits.

16. Defendants did not separately compensate Plaintiff or Similarly Situated Employees for any rest periods taken during the day or for absences occasioned by illness or for the diagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee or an employee's family member. Plaintiff and Similarly Situated Employees took rest periods during their employment and were out sick on several occasions and were never separately compensated by Defendants when this occurred. Instead, Defendants only paid the draw against commission to Plaintiff and Similarly Situated Employees. Plaintiff and Similarly Situated Employees were not paid rest period premiums or for time spent during sick leave upon their termination or within seventy-two hours of their resignation.

17. Under the standardized compensation agreements that Defendants used for Plaintiff and Similarly Situated Employees, commissions were considered earned when the loans they were based on were closed. Notwithstanding their being earned on closing, Defendants imposed a funding requirement for commissions on loans that were closed at the time of termination. Provided funding of the loan occurred within sixty (60) days of an employee's separation, commissions were 100% paid for loans closed prior to the effective date of termination, 100% paid for loans that have been approved and are cleared to close, and 50% paid for loans that have received initial approval, but were not yet cleared to close. This was true for Plaintiff and Similarly Situated Employees under the standardized compensation agreements. As a result, Defendants improperly made Plaintiff and Similarly Situated Employees insurers of its business and failed to pay Plaintiff and Similarly Situated Employees earned commissions upon termination or within 72 hours of voluntary resignation. Plaintiff is informed and believes that Defendants has engaged in similar practice of failing to pay Similarly Situated Employees for earned commission wages at the time of separation.

18. Plaintiff did not receive his final check until approximately October 28, 2016. Plaintiff is informed and believes that this was due to Defendants' standard practice of sending all final wage payments from its Washington headquarters, causing unauthorized delays in the payment of final wages. Plaintiff did not authorize any mailing of payment to his address at separation. Instead, that was unilaterally dictated by Defendants. Plaintiff is informed and believes that Defendants similarly dictated the mailing of final wages to Similarly Situated Employees. Even though Plaintiff received this October 28, 2016, it did not contain payment for all outstanding 100% and/or 50% payable commissions. Plaintiff is informed and believes that Defendants also had a policy and practice of failing to pay Plaintiff and Similarly Situated Employees the 100%/50% payable commissions even when the loans were funded within the sixty (60) days. Of the four outstanding loans at Plaintiffs termination, he has only been paid for one even though at least two others were funded within the sixty (60) day mark.

19. Defendants issued Plaintiff and Similarly Situated Employees defective wage statements. First, Defendants failed to furnish all required wage statement information on a detachable part of the check, draft, or voucher issued to Plaintiff and Similarly Situated Employees. The information concerning gross wages earned from commissions (pre-draw reconciliation) and the draw deduction calculation from the wages was stated on a separate commission report that had to be reviewed and compared to determine if all wages were paid. The paystubs themselves make it appear that the hourly wage is paid in addition to commissions, not as a draw, and have no indication regarding the running total of the draw that is deducted from the commissions. Also, gross wages were not accurately stated on the paystubs issued to Plaintiff and Similarly Situated Employees in that the total actual commissions earned in that pay period would not be paid until the next pay period, rest period premium wages were not paid or itemized on paystubs, and paid sick leave wages were never actually paid in those pay periods Plaintiff and Similarly Situated Employees were sick and off from work. Similarly, Defendants failed to itemize hourly rates of pay in effect for missed rest period premiums and paid sick leave. Because the gross wages were incorrectly calculated and itemized on the paystubs issued to Plaintiff and Similarly Situated Employees, the net wages earned were also incorrectly calculated and itemized. Defendants also improperly abbreviated its legal name on the paystubs issued to Plaintiff and Similarly Situated Employees.

20. The inclusive dates for the pay periods in which the wage statements purported to be for were incorrect.  Defendants had a policy and practice of paying Plaintiff and Similarly Situated Employees on the 15th and last day of each month.  However, Defendants paid Plaintiff and Similarly Situated Employees on the last day of each month for work performed between the 1st and 15th of the month.  Defendants paid Plaintiff and similarly situated employees on the 15th of the following month for work performed between the 16th and last day of the prior month.  For example, Plaintiff earned a commission of $7,526.96 on March 9, 2016.  However, this was not paid until the following pay period on March 31, 2016.  After accounting for the running total of advanced salary draws paid to date, the $7,526.96 commission payment appeared as a commission payment of $4,472.00 on the March 31, 2016 paystub.  There is no way to discern this information from the paystub itself.  Defendants' wage statements misstated the periods for which the pay period covered in an effort to conceal this practice.  Had Defendants paid wages earned within the correct pay period as required by Labor Code section 204 (i.e. within seven days of March 15, 2016), this March 9, 2016 commission would have appeared as a $5,338.66 commission on the paystub after accounting for the running total of advanced salary draws up to that point.  Defendants wage statement practices affected Plaintiff and all Similarly Situated Employees.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO PROVIDE REST PERIODS
### (As to all Defendants)

21. Plaintiff herein incorporates by reference paragraphs 1 through 20 above as though fully set forth herein.

22. An employer must provide an employee a paid rest period in accordance with the applicable Wage Order and Labor Code section 226.7.

23. Labor Code section 226.7 and Wage Order No. 4-2001, section 12(A) require an employer to provide a rest period of not less than ten (10) minutes for each work period of more than four (4) hours or a major fraction thereof.  Moreover, it requires employers to provide employees who work longer than ten (10) hours in a day with a third rest period.

//

24. Plaintiff alleges that Defendants failed to provide paid rest periods as it paid Plaintiff and Similarly Situated Employees on a pure commission basis with a draw that was eventually deducted from subsequent pay period. Thus, the rest periods were never paid.

25. As a proximate cause of Defendants' failure to "authorize and permit" rest periods, Plaintiff and Similarly Situated Employees are entitled to one (1) hour of pay at the employee's regular rate of compensation for each rest period not provided, as a <u>wage</u>, from three (3) years of the filing of this action. Cal. Lab. Code § 226.7 and IWC Wage Order No. 4-2001, § 12(B).

**SECOND CAUSE OF ACTION**
**WAITING TIME PENALTIES**
**(As to Defendants)**

26. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 25 as though fully set forth herein.

27. An employer must pay an employee who is terminated all unpaid wages immediately upon termination. *See* Labor Code § 201.

28. An employer must pay an employee who resigns all unpaid wages within seventy-two (72) hours of their resignation. *See* Labor Code § 202.

29. Defendants failed to pay Plaintiff and Similarly Situated Employees all vested commissions, rest period premiums, and sick leave pay that was utilized but later clawed back under the draw compensation plan at the time of separation. Additionally, Defendants had a policy and practice of sending final wage payments from its headquarters in Washington, causing substantial delay in the final wages to be paid to Plaintiff and Similarly Situated Employees.

30. An employer who willfully fails to pay an employee wages in accordance with Labor Code §§ 201 and/or 202 must pay the employee a waiting time penalty of up to thirty (30) days. *See* Labor Code § 203.

31. Defendants knew of their obligation to pay Plaintiff and Similarly Situated Employees these wages at the time of separation because based on the terms of the commission agreement entered into, these commissions were vested, and the law plainly requires that sick leave and rest periods be paid time. Additionally, Defendants are aware that mailing final wages from Washington to California would

cause Plaintiff and Similarly Situated Employees to not receive their final wages within the required time of separation.

32. As a proximate result of Defendants' conduct, waiting time penalties as set forth under California Labor Code section 203 on behalf of himself and Similarly Situated Employees. *See* Labor Code § 203.

### THIRD CAUSE OF ACTION
### FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS
### (As to Defendants)

33. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 32 as though fully set forth herein.

34. Pursuant to Labor Code section 226(a), an employer must provide an itemized statement to an employee, semimonthly or at the time of each payment of wages, showing:

> (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

35. Plaintiff alleges that Defendants intentionally and knowingly failed to provide an itemized statement or failed to provide an accurate and complete itemized statement showing the requirements set forth in Labor Code section 226(a).

36. Plaintiff alleges he and Similarly Situated Employees suffered injury as a result of Defendants' failure to provide any wage statement or by failing to provide accurate and complete

information as required by any one or more of items (1) to (9), inclusive, of Labor Code section 226, subdivision (a), including itemizing accrued sick time. Plaintiff and Similarly Situated Employees cannot promptly and easily determine, or in other words, a reasonable person would not be able to readily ascertain, the information without reference to other documents or information from the wage statement alone, one or more of the following:

> (i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of section 226, subdivision (a); or
>
> (ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period; or
>
> (iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Labor Code section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.
>
> (iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

37. As a proximate cause of Defendants' failure to provide accurate wage statements, Plaintiff was damaged and is entitled to penalties as provided pursuant to Labor Code section 226(e).

**FOURTH CAUSE OF ACTION**
**PRIVATE ATTORNEYS GENERAL ACT**
**(As to all Defendants)**

38. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 37 as though fully set forth herein.

39. Plaintiff has alleged to the Labor Commissioner that Defendants have violated the following provisions of the Labor Code in their dealings with Plaintiff and other Similarly Situated Employees:

- Count One – Violation of Labor Code §§ 246, 246.5, 248.5 (Failure to Provide Paid Sick Leave)
- Count Two – Violation of Labor Code § 223 (Failure to Pay Contract Wages)
- Count Three – Violation of Labor Code §§ 226, 226.3 (Failure to Provide Itemized Statements)

12
**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**

- Count Four – Violation of Labor Code §§ 201-203, 256 (Waiting Time Penalties)
- Count Five – Violation of Labor Code §§ 204, 210 (Untimely Payment of Wages)
- Count Six – Violation of Labor Code § 432 (Violation of Prohibition Against Illegal Contract Terms)
- Count Seven – Violation of Labor Code §§ 226.7, 558; IWC Wage Order 4, § 12(A) (Rest Periods)

40. Plaintiff seeks civil penalties against Defendants as provided in the Labor Code, or, if no civil penalty is provided, default penalties pursuant to Labor Code section 2699(f)(2).

41. Plaintiff seeks these civil penalties from Defendants pursuant to Labor Code sections 2699(a) and 2699.3.

**FIFTH CAUSE OF ACTION**
**UNFAIR COMPETITION**
**(As to all Defendants)**

42. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 41 as though fully set forth herein.

43. Unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code. *See* California Business and Professions ("B&P") Code § 17200.

44. Plaintiff and Similarly Situated Employees were not paid all commissions, provided paid rest periods or paid rest period premiums in lieu thereof, and not provided paid sick leave in accordance with the Healthy Families, Healthy Workplace Act of 2014 due to the draw clawback provisions in Defendants' compensation system.

45. Plaintiff is also informed and believe and thereon allege that such actions and/or conduct constitute a violation of the California Unfair Competition Law ("UCL") (Business and Professions Code 17200 *et seq.*) pursuant to *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163 (2000).

46. As a direct and legal result of the Defendants' conduct, as alleged herein, pursuant to the UCL (including B&P Code §17203), Plaintiff is entitled to restitution as a result of the Defendants'

unfair business practices, including, but not limited to, unpaid wages, reimbursement, and interest pursuant to B&P §§ 17203, 17208 in an amount to be proven at trial.

## DAMAGES

WHEREFORE Plaintiff requests relief as follows:

1. A jury trial;
2. <u>As to the First Cause of Action:</u>
   a. Wages as proven at trial;
3. <u>As to the Third Cause of Action:</u>
   a. Actual damages as proven at trial;
   b. Fifty dollars ($50.00) for the initial violation and one hundred dollars ($100.00) for subsequent violations, not to exceed four thousand dollars ($4,000.00);
   c. Reasonable attorney's fees and costs;
4. <u>As to the Fourth Cause of Action:</u>
   a. For civil penalties as provided for in the Labor Code for each enumerated violation;
   b. For those Labor Code sections the violation of which there is no civil penalty provided, the default penalty provided in Labor Code section 2699(f): for any initial violation, one hundred dollars ($100) for each aggrieved employee per pay period; For any subsequent violation, two hundred dollars ($200) for each aggrieved employee per pay period;
   c. Reasonable attorney's fees and costs pursuant to the Labor Code section 2699;
   d. For total penalties in the amount to be ascertained at trial.
5. For such other and further relief as this Court may deem just and proper, including, but not limited to:
   a. Wages as proven at trial;

        b.     Injunctive and declaratory relief as authorized by law;

        c.     Special and general damages; and

        d.     Attorneys' fees, costs, and interest as authorized by law;

Dated: August 11, 2017                         **Shimoda Law Corp.**

                                By:    /s/ Justin Rodriguez
                                      Galen T. Shimoda
                                      Justin P. Rodriguez
                                      Attorneys for Plaintiff
                                      JARED ACOSTA

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**