Galen T. Shimoda (Cal. State Bar No. 226752)
Justin P. Rodriguez (Cal. State Bar No. 278275)
**Shimoda Law Corp.**
9401 East Stockton Blvd., Suite 200
Elk Grove, CA 95624
Telephone: (916) 525-0716
Facsimile: (916) 760-3733
Email: attorney@shimodalaw.com
        jrodriguez@shimodalaw.com

Attorneys for Plaintiff JARED ACOSTA

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED ACOSTA, | **Case No. 2:17-cv-00466-KJM-DB** |
| Plaintiff, | **CLASS ACTION** |
| vs. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| EVERYGREEN MONEYSOURCE MORTGAGE COMPANY, a Washington Corporation; and DOES 1 to 100, inclusive, | |
| Defendants. | Date:     May 18, 2018<br>Time:     10:00 a.m.<br>Crtm:     3, 15th Floor<br>Judge:    Hon. Kimberly J. Mueller |
| | Filed:       January 24, 2017<br>FAC Filed:   August 11, 2017<br>Trial Date:   None Set |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m., on May 18, 2018, or as soon after as the matter can be heard, on the 15th Floor in Courtroom 3 of the United States Eastern District Court of California, 501 I Street Sacramento, California 95814, Plaintiff Jared Acosta, individually and on behalf of all other similarly situated employees, will, and hereby does, move for entry of an Order for the following:

1. Preliminarily and conditionally approving the proposed class herein for purposes of settlement subject to a final fairness hearing and certification of the settlement class;

2. Preliminarily and conditionally approving and appointing Plaintiff Jared Acosta as class representative for purposes of settlement subject to a final fairness hearing and certification of the settlement class;

3. Preliminarily and conditionally approving and appointing the Shimoda Law Corp. as class counsel for purposes of settlement subject to a final fairness hearing and certification of the settlement class;

4. Preliminarily and conditionally approving the proposed class action and Private Attorneys General Act settlement, which is filed as Exhibit A to this Motion and incorporated herein by reference subject to a final fairness hearing and certification of the settlement class;

5. Preliminarily and conditionally approving the appointment of Simpluris, Inc. as the class action settlement administrator subject to a final fairness hearing and certification of the settlement class;

6. Preliminarily and conditionally approving as to form and content the proposed Notice of Proposed Class Action Settlement, and Hearing Date for Final Court Approval of Settlement and Disbursement Form ("Class Notice"), which provide class members with information regarding the settlement, including how to participate in the settlement, how to opt out of the settlement, and how to object to the settlement and/or dispute the calculation of their individual shares of the settlement;

7. Preliminarily and conditionally approving the proposed procedures to notify the class and determining that the proposed notification procedures and Class Notice satisfy class members' due process rights subject to a final fairness hearing and certification of the settlement class;

8. Directing the Defendant to report employment information, including social security numbers, to the claims administrator to administer the settlement;

9. Scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the members of the settlement class and on certification of the settlement class;

10. Setting a hearing and briefing schedule to consider Plaintiff's Motion for Attorneys' Fees, Costs, and Representative Enhancement that will be heard on the same day as the final approval hearing;

11. Preliminarily and conditionally approving, subject to a final fairness hearing and certification of the settlement class, that for any portion of the Net Settlement Amount allocated to class members that was not claimed by class members by cashing their respective settlement checks before the deadline to do so, that residue will be paid out pursuant to Code of Civil Procedure section 384(b), in the following manner: (a) 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund; (b) 25% to the State Treasury for deposit into the Equal Access Fund of the Judicial Branch; and (c) 50% to the Sacramento Voluntary Legal Services Program Employment Law Clinic as the cy pres beneficiary; and

12. Preliminarily and conditionally approving and adopting the Proposed Order and its implementation schedule, which is filed herewith and incorporated by reference.

This motion is being made pursuant to Federal Rule of Civil Procedure 23 and California Labor Code section 2699(l) on the grounds that the proposed class action and Private Attorneys General Act settlement is fair, reasonable, and adequate as to all class members and should be approved by the Court. This motion will be based on the notice of motion, memorandum of points and authorities, the Declaration of Galen T. Shimoda, the Declaration of Jared Acosta, exhibits, the record and files of this case, and any further oral or documentary evidence introduced at the hearing of this motion.

Pursuant to Section 4 of Hon. Kimberly J. Mueller's Standing Order issued on March 3, 2017, Plaintiff's counsel hereby certifies that the parties have met and conferred regarding this Motion and the need for it to be filed pursuant to the Federal Rules of Civil Procedure regarding approval of class action settlements and pursuant to the Private Attorneys General Act ("PAGA") requiring Court review and approval of PAGA settlements.

Dated: April 4, 2018                                    **Shimoda Law Corp.**

                                        By: ___/s/ Justin P. Rodriguez_____
                                             Galen T. Shimoda
                                             Justin P. Rodriguez
                                             Attorneys for Plaintiff

## TABLE OF CONTENTS

I. Introduction and Opening Summary of Argument ................................................................1

II. Procedural and Litigation History............................................................................................3

III. Investigation and Discovery Conducted ................................................................................3

IV. Negotiation and Proposed Settlement ....................................................................................4

    a. Plaintiff and Defendant Engaged in Extensive Arm's Length Negotiations ..............4

    b. The Terms of Settlement................................................................................................4

    c. Allocation of Settlement Funds ....................................................................................6

V. Argument ....................................................................................................................................7

    a. Class Action Settlements And PAGA Settlements are Subject to Court Review and Approval....................................................................................................................7

    b. Preliminary and Conditional Approval of the Settlement Class is Appropriate ........7

        i. Numerosity........................................................................................................8

        ii. Commonality, Typicality, and Predominance .................................................8

        iii. The Adequacy Requirement is Met ...............................................................10

        iv. Superiority........................................................................................................11

    c. The Agreement Should Be Preliminarily Approved Because The Terms of The Agreement Are Fair and Within the Range of Reasonableness.........................................................................................................12

        i. The Settlement is a Result of Serious, Informed, Non-Collusive Arm's Length Negotiations Between the Parties .....................................................12

        ii. The Settlement Has No Obvious Deficiencies...............................................13

        iii. The Settlement Does Not Improperly Grant Preferential Treatment to The Class Representative or Segments of the Class ....................................14

        iv. The Settlement Falls Within The Range of Possible Approval ...................15

            A. The Settlement is Fair and Reasonable Based on the Strength of Plaintiffs' Case and the Risks, Costs, Complexity and Likely Duration of Further Litigation ...............................................................15

            B. Risk of Maintaining Class Action Status Through Trial........................16

            C. The Amount Offered In Settlement........................................................16

            D. The Extent of Investigation and Discovery Completed Provided Ample Information to Enter Into an Informed and Reasonable Settlement .............................................................................................17

            E. The Views and Experience of Plaintiffs' Counsel .................................17

F.   The Presence of A Governmental Participant and the Reaction of Class Members ................................................................................... 17

G.   Class Counsels' Attorneys' Fees and Costs Request and Request for Representative Enhancement Payments ................................................... 18

d.   The Notice Packet and Notice Procedures Comply With Class Members' Due Process Rights ............................................................................................. 18

VI.   Conclusion ........................................................................................................... 19

# TABLE OF AUTHORITIES

**CALIFORNIA CASES**

*Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal.4th 1004, 1033 (2012) ................................ 10

*Lubin v. Wackenhut Corp.,* 5 Cal.App.5th 926, 958-960 (2016) ....................................... 10

*Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98, 108-114 (2017) .................................... 10


**CALIFORNIA STATUTES AND OTHER AUTHORITIES**

Cal. Labor Code section 204................................................................................................. 1

Cal. Labor Code section 226 (a) ........................................................................................ 10

Cal. Labor Code section 226 (e)(2)(B)(i) .......................................................................... 10

Cal. Labor Code section 432 .............................................................................................. 1

Cal. Labor Code sections 2699 et seq. ................................................................................ 3

Cal. Labor Code section 2699(l) ....................................................................................... 17

Cal. Labor. Code section 2699.3(a), (c)............................................................................. 7

Cal. Labor Code section 2699(e) ...................................................................................... 16

Cal. Code of Civil Procedure section 384(b) ...................................................................... 6


**FEDERAL CASES**

*Alba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079, *30, 31 (C.D. Cal. 2007) .................... 8, 9

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 665 (E.D. Cal. 2008) ........................................... 15

*Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) ................................................. 7, 8

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ..................................................... 11

*Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-1195 (2013) ............. 8

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015) .................................... 7

*Bluford v. Safeway Inc.*, 216 Cal.App.4th 864, 873 (2013) ........................................... 9, 10

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 622 (N.D. Cal. 1979) .......................... 7, 11, 13, 17

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) .................................. 18

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) ........................................ 15, 18

*In re Conagra Foods, Inc.*, 90 F.Supp.3d 919, 972-73 (C.D. Cal. 2015) ............................................. 8

*Dirks v. Layton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125 (D. Minn. 1985) ........................ 11

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) ........... 16

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) ............................................ 8

*Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128, 1137 (N.D. Cal. 2013) ............................. 9

*Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 595 (S.D. Cal. 2010) ............................................... 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20, 1027 (9th Cir. 1998) ................................... 7, 8

*Harris*, 2011 U.S. Dist. LEXIS 48878, *23, 28-29 ..................................................................... 13, 15

*Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328, *17, 67-68 (C.D. Cal. 2012) .......... 8, 10

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,

    654 F.3d 935, 947 (9th Cir. 2011) ................................................................................... 13

*Lane v. Facebook, Inc.*, 696 F.3d 811, 819, 823-825 (9th Cir. 2012) ............................... 7, 13, 14, 16

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013) .................................. 9, 12

*Lilly v. Jamba Juice Co.*,

    308 F.R.D. 231, 241 (N.D. Cal. 2014); *Wixon*, 2009 U.S. Dist. LEXIS 100451, *20-21 ...... 8

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ........................................... 16

*In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1042 (2007) ......................................... 15

*Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 223 (E.D. Cal. 2015) ........................................ 10

*Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014) ............................. 15, 16

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,

    779 F.3d 934, 943 (9th Cir. 2015) ............................................................................... 10, 11

*Rica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) ............................................. 8

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006) .............................. 8

*Ruch v. Am Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 39629, *12 (N.D. Cal. 2016) ..................... 13

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015) ................................... 9

*Sciortino v. PepsiCo, Inc.*, 2016 U.S. Dist. LEXIS 83937, *10, 12-13 (N.D. Cal. 2016) ........... 8, 11

*In re Scorpion Techs., Inc. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21413, *10 (N.D. Cal. 1994) .......... 8

*Stevenson v. Dollar Tree Stores, Inc.*, 2011 U.S. Dist. LEXIS 119801, *13 (E.D. Cal. 2011) ........ 13

*Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 66436 (N.D. Cal. 2006) ........................................9

*United Steel, Paper & Forestry, Rubber, Mfg. v. ConocoPhillips Co.*,

    593 F.3d 802, 809 (9th Cir. 2010) ........................................................................9

*Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 114597 (N.D. Cal. 2012) ...............7

*Wixon v. Wyndham Resort Dev. Corp.*,

    2009 U.S. Dist. LEXIS 100451, *5, 20-21,  (N.D. Cal. 2009) ................................8

*Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667, *38 (N.D. Cal. 2011) ............14

**FEDERAL STATUTES AND OTHER AUTHORITIES**

29 U.S.C. § 1715.........................................................................................................17

Fed. R. Civ. Proc. 23(b)(3) ................................................................................7, 8, 11, 12

Fed. R. Civ. Proc., Rule 23(e)............................................................................................7

Fed. R. Civ. Proc. 23(c)(2)(B) .......................................................................................18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION AND OPENING SUMMARY OF ARGUMENT

This Motion is brought seeking preliminary approval of a wage and hour class action and Private Attorneys General Act ("PAGA") settlement in the total gross amount of $350,000.00, which is exclusive of Defendant Evergreen Moneysource Mortgage Company's ("Defendant"), tax obligations on any monies allocated as wages under the settlement.  *See generally* Exhibit A (Joint Stipulation Regarding Class Action Settlement and Release).  Plaintiff Jared Acosta ("Plaintiff") brought this class action and PAGA action on behalf of himself and other similarly situated employees employed by Defendant seeking unpaid wages, penalties, and interest.  *See generally* Exhibit B (Plaintiff's First Amended Complaint).

This lawsuit is based on Plaintiff's contention that Defendant's policies and practices violated California law, including the following alleged policies and practices: 1) Defendant's commission/draw compensation system did not directly compensate class members for rest periods and, therefore, Defendant failed to provide legally compliant paid rest periods to class members; 2) Defendant's failure to provide directly compensated rest periods caused unpaid wages to be owed at termination, triggering waiting time penalties; 3) Defendant failed to provide accurate wage statements as they did not contain the complete, full name of the employer and did not itemize rest period premiums owed; 4) Defendant's commission compensation system failed to provide paid sick leave to class members; 5) Defendant failed to pay all contract wages owed under the terms of its commission agreements, improperly imposing funding requirements before commissions would be paid; 6) Defendant failed to pay all wages timely at the time of termination due to its sending final wage payments from its Washington headquarters; 7) Defendant failed to timely pay wages by paying earned commission at a time during a subsequent pay period that exceeded the allowable time limits under Labor Code section 204; and 8) Defendant required class members to enter into commission agreement that contained unlawful terms in violation of Labor Code section 432.  *See generally* Exhibit B; Exhibit C (Plaintiff's March 21, 2017 Ltr. to the Labor and Workforce Development Agency).  Plaintiff contends that he has filed a meritorious class action lawsuit and that this case is appropriate for class certification for settlement

purposes as the requisites for class certification in this case can be satisfied and the terms of the settlement are fair, reasonable, and adequate as to all class members. *See* Exhibit A; Exhibit B.

Defendant has denied all of Plaintiff's allegations in their entirety and any liability or wrongdoing of any kind. *See* Declaration of Justin P. Rodriguez ("Decl. Rodriguez"), ¶7. Defendant has contended, among other things, that its compensation system paid employees for all hours worked, including time spent during rest periods and sick leave. *See id.*

However, subject to final approval by the Court, Plaintiff and Defendant have been able to reach a class and PAGA settlement as a result of discovery, litigation, negotiations, and a mediation conducted by the Hon. Ronald M. Sabraw (Ret.). *See* Exhibit A. Based on their knowledge of the issues in this case, Plaintiff and Plaintiff's counsel are convinced that the proposed settlement is in the best interest of the class considering the discovery, litigation, and negotiations that have occurred. *See* Decl. Rodriguez ¶¶7-13; Declaration of Jared Acosta ¶8. The uncertainty of obtaining and maintaining class certification, difficulties of complex litigation, risks and uncertainty in proving the alleged claims on the merits, risks and uncertainty in proving damages, and the potential for protracted litigation and various possible delays and appeals were carefully considered by Plaintiff and Plaintiff's counsel in agreeing to the proposed settlement. *See id.*

It is well within the discretion of this Court to grant preliminary and conditional approval of the proposed settlement, which satisfies all of the criteria for preliminary settlement approval under federal law, and preliminarily and conditionally approve the settlement class. Accordingly, Plaintiff requests that the Court: (1) preliminarily approve the proposed settlement class; (2) grant preliminary approval of the proposed Joint Stipulation Regarding Class Action Settlement and Release ("Agreement"); (3) set dates for distribution of the Notice of Proposed Class Action Settlement, and Hearing Date for Final Court Approval of Settlement and Disbursement Form ("Class Notice") to the class; (4) set a final fairness and settlement class certification hearing and briefing schedule therefore; (5) set a hearing for Plaintiff's Motion for Attorneys' Fees, Costs and Representative Enhancement and briefing schedule therefore that will be heard at the same time as the final fairness hearing; and (6) adopt the implementation schedule contained in the proposed order.

//

## II.   PROCEDURAL AND LITIGATION HISTORY

On November 16, 2016, Plaintiff sent notice pursuant to California Labor Code sections 2699 *et seq.* to the California Labor and Workforce Development Agency ("LWDA") to exhaust administrative remedies under the PAGA. The notice alleged facts and theories to support PAGA claims for failure to provide paid sick leave, failure to pay contract wages, failure to provide itemized statements, waiting time penalties, and untimely payment of wages. An amended notice was sent to the LWDA on March 21, 2017 alleging violation of the prohibition against illegal contract terms and failure to provide legally compliant rest periods. The LWDA did not respond within the statutory period to any of the provided notices, authorizing Plaintiff to act as Private Attorney General under the PAGA statute. *See* Decl. Rodriguez ¶5; Exhibit C.

Plaintiff filed a Complaint on January 24, 2017 in the California Superior Court for the County of Sacramento. Defendant removed the case to the United States District Court for the Eastern District of California on approximately March 2, 2017. Plaintiff filed a First Amended Complaint on approximately August 11, 2017 alleging class actions claims. *See* Decl. Rodriguez ¶6; Exhibit B. The parties engaged in discovery through substantial informal data exchanges that included the number of class members, the dates of employment for class members, total earnings of class members during the claim period, average rates of pay for class members, insurance documents, commission reports, paystubs, documents reflecting commission paid upon separation or termination, relevant handbook excerpts, and other documents relating to the alleged claims. *See* Decl. Rodriguez ¶9. After an analysis of this information, its impact on certification, the asserted claims and damages, and a full day of mediation, the parties were able to reach a mutually agreeable settlement. *See* Decl. Rodriguez ¶¶8-9.

## III.   INVESTIGATION AND DISCOVERY CONDUCTED

Plaintiff and Plaintiff's counsel thoroughly investigated the potential for obtaining and maintaining certification, the merits of the claims, and the potential damages for such claims. *See* Decl. Rodriguez ¶¶ 8-13. Plaintiff experienced all policies and practices that gave rise to the asserted claims. *See* Declaration of Jared Acosta ¶3. This included review of the standard commission agreements that were the basis for Plaintiff's claims.

The parties engaged in substantial investigations concerning the scope of the class, their workweeks, class member employment data (commission reports and paystubs), wage and hour policies, and also performed other document review and factual and legal analysis regarding each aspect of the underlying claims. *See* Decl. Rodriguez ¶10. The discovery covered the number of class members, their workweeks, all relevant wage and hour policies and practices at issue, and average rates of pay for class members. *See id.* The information Plaintiff produced and obtained from Defendant enabled Plaintiff to create an accurate damages model and perform reliable calculations to determine Defendant's potential exposure if Plaintiff were successful on certification and at trial. *See id.* at ¶¶10-13.

## IV.    NEGOTIATION AND PROPOSED SETTLEMENT

### a.    Plaintiff and Defendant Engaged in Extensive Arm's Length Negotiations

The final settlement occurred only after extended, contentious arm's length negotiations. For over one year, Plaintiff has been investigating the claims and discussing with Defendant's counsel the merits of the claims and certification issues present in this case. *See id.* at ¶¶8-13. The parties attended mediation utilizing the services of mediator Hon. Ronald M. Sabraw (Ret.), on February 21, 2018 to attempt to resolve the claims. *See id.* ¶8. The parties ultimately did not resolve the matter on that day. *See id.* Further discussions facilitated by Judge Sabraw occurred after the mediation that resulted in the parties reaching an agreement in principle to resolve the claims for the amount of $350,000.00 and later enter into the Agreement. *See id.*

### b.    The Terms of the Settlement

Under the Agreement, Defendants have agreed to the following:

1.    The scope of the settlement class will include all employees who have, or continue to work for Defendant within California, except for those classified as outside sales employees, who were paid by commissions only or commissions in conjunction with a draw against commissions from January 24, 2013 to the Court's entry of an order preliminarily approving the class settlement. *See* Exhibit A, §§ 1.5, 1.6, 4.1. The settlement class shall not include any person who submits a timely and valid request to opt-out as provided in the Agreement. *See id.* at § 4.1. The estimated class size is approximately 59 individuals. *See id.* at § 1.5.

//

2.       Pay $350,000.00 in addition to any monies necessary to satisfy Defendant's tax obligations (*e.g.* employer FICA, FUTA and SDI contributions on wage payments) on any monies distributed to class members that are allocated as wages under the Agreement. *See id.* at § 5.1. No portion of this amount will revert to Defendant for any reason. *See id.* at § 5.6.

3.       The parties agree that up to $20,000.00 for Plaintiff Jared Acosta will be paid as a Class Representative Enhancement Award in addition to any amount he may be entitled to under the terms of the settlement. *See id.* at § 5.3. Any monies not so awarded will be redistributed to the class pro rata. *See id.*

4.       The parties agree that the cost of administering this class action settlement shall be paid from the settlement proceeds. Subject to Court approval, the parties have selected Simpluris, Inc., to act as the class action administrator, who has provided a cost estimate of approximately $5,000.00 to administer the class settlement. *See* Exhibit D (Simpluris, Inc., Class Administration Quote). The proposed notices sent to class members will state that the costs will not exceed $10,000.00 to account for any future, unforeseen administration costs that may arise between now and final approval. The difference between actual administration costs awarded and the $10,000.00 will be redistributed to the class pro rata. *See* Exhibit A, § 5.5.

5.       The parties agree that $10,000.00 of the settlement proceeds will be allocated to PAGA claims. *See* Exhibit A, § 5.4. The settlement class will receive 25% of this amount (*i.e.*, $2,500), which will be included in the class payout, and the LWDA will receive 75% of this PAGA penalty (*i.e.*, $7,500). *See id.*

6.       The parties agree that up to twenty-five percent (25%) of the Gross Settlement Payment, *i.e.* $87,500.00, will be paid for Plaintiff's attorneys' fees and Defendant will not oppose any application for attorneys' fees so long as it is within this threshold. *See id.* at § 5.2. Additionally, the parties agree that Plaintiff will also be entitled to litigation costs not to exceed $10,000.00. *See id.* The proposed notices sent to class members will state amount of attorneys' fees and costs requested. *See* Exhibit 1 to Exhibit A. The difference between the amount of attorneys' fees and costs awarded and the maximum amounts allocated therefor under the Agreement will be redistributed to class members pro rata. *See* Exhibit A, § 5.2

7. Any class action administrator fees, any amounts paid for attorneys' fees and costs, class representative enhancements, and payment to the LWDA will be paid out from the Gross Settlement Amount ($350,000.00), not in addition to the Gross Settlement Amount. *See id.* at § 5.1.

8. Class members who fail to timely opt out of this settlement will waive any and all claims that were pled in the Action for all periods of time the class member worked during the class period. *See id.* at §§ 1.27, 1.28, 6.1.

9. For any residue from settlement checks that were not cashed within one hundred and eighty (180) days of issuance, this amount will be paid out pursuant to Code of Civil Procedure section 384(b), in the following manner: (a) 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund; (b) 25% to the State Treasury for deposit into the Equal Access Fund of the Judicial Branch; and (c) 50% to the Sacramento Voluntary Legal Services Program Employment Law Clinic as the cy pres beneficiary. *See* Exhibit A, §§ 5.6, 7.9.

### c. Allocation of Settlement Funds

Allocation of the settlement funds will be based on the number of Qualifying Workweeks a class member worked. *See id.* at §§ 1.2, 1.17, 1.25, 1.26, 5.9, 7.8.1. To the extent a class member worked less or more than an exact number of weeks and/or less than one week, a fraction of a week applicable to that class member will also be determined (*e.g.* one of seven days, two of seven days, etc.). *See id.* Each individual class member's share will be determined by taking the Qualifying Workweeks for the individual and dividing that by the total Qualifying Workweeks for all class members and multiplying that fraction by the Net Settlement Amount (*i.e.* the Gross Settlement Amount less attorneys' fees and costs, administration costs, the class representative enhancement awards, and the payment to the LWDA). *See id.* at § 5.9. Payment will not require the submission of any claim form. *See id.* Half of the amount paid to class members will be characterized as W2 wages and half of the amount paid to class members will be characterized as 1099 income. *See id.* at § 5.8.

//
//
//
//

---

## V.    ARGUMENT

### a.    Class Action Settlements And PAGA Settlements are Subject to Court Review and Approval

A class action may not be dismissed, compromised, or settled without Court approval and the decision to approve or reject a settlement is committed to the Court's sound discretion.  *See* Fed. R. Civ. Proc. 23(e).  Similarly, settlements under the PAGA require Court review and approval.  *See* Cal. Lab. Code § 2699(l).  Where the class settlement is reached prior to class certification "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015).  At the preliminary approval stage, the Court will determine (1) whether to preliminarily and conditionally approve the settlement class subject to a final fairness hearing and certification of the settlement class, (2) whether to preliminarily and conditionally approve the settlement pending a final fairness hearing, and (3) whether to authorize notice to the class.  *See generally Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 114597 (N.D. Cal. 2012).  However, courts should give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979).  There is a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

### b.    Preliminary and Conditional Approval of the Settlement Class is Appropriate

To proceed as a class action it must be found that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. Proc. 23(a).  Additionally, in cases seeking certification under Federal Rules of Civil Procedure 23(b)(3), the

questions of law or fact must predominate over questions affecting individual members and a class action must be superior to other methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. Proc. 23(b)(3); *Sciortino v. PepsiCo, Inc.*, 2016 U.S. Dist. LEXIS 83937, *10 (N.D. Cal. 2016). Public policy favors the use of class actions such that "[a]ny doubts regarding the propriety of class certification should be resolved in favor of certification." *Wixon v. Wyndham Resort Dev. Corp.*, 2009 U.S. Dist. LEXIS 100451, *5 (N.D. Cal. 2009); *Allen*, 787 F.3d at 1223. It is a procedural question; it does not ask whether an action is legally or factually meritorious. *See Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-1195 (2013); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011). The parties agree that, for the purposes of settlement, the class should be certified. *See* Exhibit A, § 5.11.

### i. Numerosity

A class with more than forty putative members is presumed to satisfy the numerosity prerequisite. *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006); *In re Scorpion Techs., Inc. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21413, *10 (N.D. Cal. 1994). In the present case, there are approximately 59 class members, which exceeds what other Courts have found to be sufficient for satisfying the numerosity requirement. *See id.* Thus, this requirement is satisfied.

### ii. Commonality, Typicality, and Predominance

The commonality element is construed liberally, not requiring every issue of law or fact to be common. *See In re Conagra Foods, Inc.*, 90 F.Supp.3d 919, 972-73 (C.D. Cal. 2015); *Hanlon*, 150 F.3d at 1019-20; *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328, *17 (C.D. Cal. 2012). Similarly, the typicality element is permissively construed, only requiring the representative's claims to be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020.

The question of predominance begins with the elements of the underlying cause of action and then considers whether those elements are capable of being proven by answers to questions common to the class. *See Rica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014); *Wixon*, 2009 U.S. Dist. LEXIS 100451, *20-21. The existence of "some variation among the individual employees . . . do not defeat predominance." *See*

1  *Alba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079, *30 (C.D. Cal. 2007).  This is especially true

2  where the focus of the conduct alleged to be unlawful is on the defendant.  *See Alba*, 2007 U.S. Dist.

3  LEXIS 28079, *31 (finding that while an overtime exemption was a fact intensive inquiry, it does not

4  defeat predominance due to the actual focus on defendant's conduct).  For example, the presence of

5  unlawful policies or practices will support a finding of predominance.  *See, e.g., Tierno v. Rite Aid

6  Corp.*, 2006 U.S. Dist. LEXIS 66436 (N.D. Cal. 2006).  Challenges to Plaintiffs' legal theories and

7  doubts regarding Plaintiffs' ability to prove the claims at trial are irrelevant to determining

8  predominance.  *See United Steel, Paper & Forestry, Rubber, Mfg. v. ConocoPhillips Co.*, 593 F.3d 802,

9  809 (9th Cir. 2010).  Similarly, Courts have found that "individual questions about the number of hours

10  worked, wages earned, and compensation paid . . . will not defeat certification."  *Gomez v. Rossi

11  Concrete, Inc.*, 270 F.R.D. 579, 595 (S.D. Cal. 2010).  Nor will individualized damages issues act as a

12  basis to deny certification.  *See Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013)

13  (reversing a denial of certification based on individual issues in determining damages).

14         In the present case, questions of law or fact are not only common to the class, they also

15  predominate over any potential individualized issues.  Each of Plaintiff's theories of recovery are based

16  on alleged common practices of Defendants or their alleged uniformly applied policies (or lack thereof):

17  1) Defendant's commission compensation system did not directly compensate class members for rest

18  periods and, therefore, Defendant failed to provide legally compliant paid rest periods to class members;

19  2) Defendant's failure to provide directly compensated rest periods caused unpaid wages to be owed at

20  termination, triggering waiting time penalties; 3) Defendant failed to provide accurate wage statements

21  as they did not contain the complete, full name of the employer and did not itemize rest period

22  premiums owed; 4) Defendant's commission compensation system failed to provide paid sick leave to

23  class members; 5) Defendant failed to pay all wages timely at the time of termination due to its sending

24  final wage payments from its Washington headquarters.[1]  *See* Exhibit B.

25         Claims similar to Plaintiff's have been found to be sufficient for class certification in several

26  cases.  *See, e.g., Bluford v. Safeway Inc.*, 216 Cal.App.4th 864, 873 (2013) (certifying rest period class

27
28  _____
[1] The remaining of Plaintiff's claims arise under the PAGA, which does not require certification pre-requisites to be met.  *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015); *Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128, 1137 (N.D. Cal. 2013).

based on claims the piece rate system did not directly compensate for this time); *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98, 108-114 (2017) (applying *Bluford* to commission pay systems). Certification on these theories will also support certification of waiting time penalty and wage statement claims as derivative violations. *See, e.g. Jimenez*, 2012 U.S. Dist. LEXIS 65328, *67-68; *Lubin v. Wackenhut Corp.,* 5 Cal.App.5th 926, 958-960 (2016) ("First, the question whether Wackenhut's wage statements contained the required elements under Labor Code section 226, subdivision (a) is a common question, and Labor Code section 226, subdivision (e)(2)(B)(i) clarifies that injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect . . . Second, because plaintiffs' meal and rest period claims are suitable for class treatment, their theory that the wage statements failed to include premium wages earned for missed meal and rest periods also is suitable for class treatment"); *Pena v. Taylor Farms Pac., Inc.,* 305 F.R.D. 197, 223 (E.D. Cal. 2015) ("Because the claims of this subclass [regarding waiting time penalties] that may proceed are entirely derivative of the meal break claims of the mixed hourly worker subclass, they meet or fail to meet the commonality and predominance requirements to the same extent"); It is the lawfulness of Defendants' policies and practices themselves that are at issue, which renders certification appropriate. *See Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal.4th 1004, 1033 (2012) (finding such determinations to be "the sort routinely, and properly, found suitable for class treatment").

Plaintiff's claims are typical of the class members claims. *See* Exhibit B; Declaration of Jared Acosta ¶3. Plaintiff was subjected to, and experienced, the same policies and practices being alleged to be unlawful. *See* Declaration of Jared Acosta ¶¶2-3. As a result, the basis for his claims and the types of remedies sought will be similar amongst all class members. Plaintiff's claims are, therefore, reasonably co-extensive with those of absent class members. *See* Exhibit B; Declaration of Jared Acosta ¶¶2-3.

### iii.   The Adequacy Requirement is Met

To determine adequacy, answers to the following questions must be given: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *See Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 943 (9th Cir. 2015) (finding no

conflict because there were no structural differences in the claims of the representative and other class members under the settlement agreement and the enhancement awards were not conditioned on the representatives approval of the settlement).  As to the second question, "[t]he relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation."  *See id.*  In the present case, the Agreement has no structural conflicts as there is only one settlement class (no subclasses) and all members of the class are subject to the same distribution formula, so Plaintiff had no incentive to favor one subclass over another.  *See id.* at 943; Exhibit A, at §§ 1.5, 5.3.  There is also no conditioning of the representative enhancement award on Plaintiff's supporting or approving the Agreement.  *See id.*  Neither Plaintiff nor his counsel have any conflicts with the putative class and have conducted an exhaustive review and analysis of the claims to obtain a beneficial result for the class.  *See* Declaration of Jared Acosta ¶¶4-7; Decl. Rodriguez ¶¶8-13.  For the same reasons discussed above regarding typicality, Plaintiff shares a common nexus of legal and factual issues with the class ensuring they have the same interest in pursuing the most beneficial results possible in this case.  Additionally, Plaintiff's counsel are experienced and have been found by several Courts to be adequate class counsel in numerous complex wage and hour class actions.  *See* Decl. Rodriguez ¶¶14-18.  Thus, Plaintiff and Plaintiff's counsel are adequate representatives of the settlement class members.

### iv.  Superiority

Factors relevant to determining whether the class action is superior includes "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . ."  Fed. R. Civ. Proc. 23(b)(3).  Where certification is for settlement purposes only, considerations regarding manageability are irrelevant.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).  Additionally, where there is relatively few or no other lawsuits concerning the same issues being litigated by members of the putative class, this favors a finding that a class action is superior.  *See Dirks v. Layton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125 (D. Minn. 1985).  In the present case, class certification would be superior to alternative forms of adjudication.  First, Plaintiff has uncovered

1    no evidence of any separate lawsuits being filed by class members against Defendant litigating the same

2    or similar issues.  *See* Decl. Rodriguez ¶10.  Second, there may be only relatively small awards at stake

3    for class members if they were to attempt individual litigation, which supports a superiority finding.  *See*

4    *Leyva*, 716 F.3d 510.  Third, the class is composed of individuals working in California, asserting claims

5    based on California substantive law, and Defendant held offices within California, including the Eastern

6    District, which supports the desirability of concentrating the litigation in the Eastern District.  *See*

7    Declaration of Jared Acosta ¶2; Exhibit B; Exhibit A §§ 1.5, 1.6, 4.1.

8        For the reasons set forth above, the Court should preliminarily and conditionally approve the

9    settlement class, subject to a final fairness hearing, as all the prerequisites of Rule 23(a) and the

10    additional requirements of Rule 23(b)(3) are satisfied.

11        c.  **The Agreement Should Be Preliminarily Approved Because The Terms of The**

12            **Agreement Are Fair and Within the Range of Reasonableness**

13        A Court may grant preliminary approval of a proposed class settlement "if the settlement: (1)

14    appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious

15    deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of

16    the class; and (4) falls within the range of possible approval."  *Sciortino*, 2016 U.S. Dist. LEXIS 83937,

17    *12-13 (citing *Harris v. Vector Mktng. Corp.*, 2011 U.S. Dist. LEXIS 48878, *7 (N.D. Cal. 2011);

18    *Dudum v. Carter's Retail, Inc.*, 2015 U.S. Dist. LEXIS 118583, *3 (N.D. Cal. 2015)).  "[T]he court is

19    not to make a final determination of liability or damages, or to hold a trial or rehearsal of the trial. Nor is

20    it to determine whether a better settlement might have been negotiated."  *Boyd*, 485 F.Supp. at 617.

21        i.  **The Settlement is a Result of Serious, Informed, Non-Collusive Arm's Length**

22            **Negotiations Between the Parties**

23        The parties were in possession of all necessary information during the negotiations and in

24    Mediation.  Plaintiff conducted investigations and engaged in informal discovery, including exchange of

25    documents, records, and company policies that covered all aspects of the class claims and sought

26    information regarding the class members themselves to ensure that Plaintiff could determine liability

27    and create an accurate damages model.  *See* Decl. Rodriguez ¶¶ 8-13.  As a result, Plaintiff was able to

28    make a reasonable estimation of Defendant's potential liability against which the results of any

settlement could be compared.  *See id.*  For these reasons, the settlement now before the Court was reached at a stage where the parties had a clear view of the strengths and weaknesses of claims and defenses at issue sufficient to support the settlement.  *See Boyd,* 485 F.Supp. at 622.

There was also no collusion in reaching the proposed class settlement as the negotiations were adversarial and contentious, although still professional in nature, at all times.  *See* Decl. Rodriguez ¶8. There are no signs of collusion present in the Agreement.  First, the amount allocated for attorneys' fees is within the ranges approved in by other District Courts and the Agreement is not contingent on the full fee allocation being awarded.  *See, e.g., Ruch v. Am Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 39629, *12 (N.D. Cal. 2016) (30% fee award found reasonable in wage and hour class settlement); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 U.S. Dist. LEXIS 119801, *13 (E.D. Cal. 2011) ("[I]n California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement and, thus, in excess of $1 million").   Thus, the attorneys' fees do not constitute a disproportionate distribution of the settlement. Second, although Defendant agreed to not contest the request for attorneys' so long as it does not exceed twenty-five percent of the Gross Settlement Amount, the amount of the fees is tied to the actual cash value of the proposed settlement rather than separate and apart from the class fund, ensuring the Plaintiff's counsels' interests are aligned with class members.  *See* Exhibit A, § 5.2.  Third, any fees not awarded will be distributed to the class pro rata and, in fact, no funds from the proposed settlement will revert to Defendant for any purpose whatsoever.  *See id.* at §§ 5.2, 5.6.  Based on these facts, it is clear that there are no signs of collusion present in the Agreement.  *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011).

### ii.  The Settlement Has No Obvious Deficiencies

The Agreement contains no obvious deficiencies and need not be perfect to receive approval. *See Lane*, 696 F.3d at 819.  There are no indications of collusive negotiation in reaching the proposed settlement, there is no preferential treatment of the class representative or segments of the class, and the allocations for attorneys' fees is within the ranges approved by District Courts in other wage and hour class action cases, which supports a finding of no obvious deficiencies.  *See, supra,* Section V.c.i; *infra,* Section V.c.iii; *Harris*, 2011 U.S. Dist. LEXIS 48878, *23.  Instead, the settlement represents a

1    substantial amount of monetary recovery for class members and requires only the waiver of claims pled

2    in the litigation.  *See* Exhibit A, § 1.27, 5.1.

3         ### iii.   The Settlement Does Not Improperly Grant Preferential Treatment to The Class
             Representative or Segments of the Class

4

5         The Agreement does not contain any structural conflicts between class members or between

6    class members and Plaintiff as there are no subclasses and all class members are subject to the same

7    allocation formula.  *See* Exhibit A, §§ 1.5, 5.3.  Class members are all subject to the same waiver of

8    claims, which is more limited than the waiver Plaintiff is subject too.  *See* Exhibit A, §§ 1.7-1.8, 1.27-

9    1.28, 6.1-6.3.  Although class members may ultimately receive different amounts under the Agreement,

10   this is not a sufficient reason to deny settlement approval as it is appropriate to account for potential

11   differences in the amount damages suffered by class members and the risks associated with the various

12   asserted claims. *See Lane*, 696 F.3d at 823-825.  Because Plaintiff has alleged the uniform application of

13   unlawful policies and practices by Defendant, a reasonable allocation of the settlement funds would be

14   based on tenure, *i.e.* workweeks.  *See* Exhibit B.

15        Plaintiff will ultimately request an enhancement award of $20,000.00 to compensate him for the

16   time, expense, risk assumed, and actions taken for the benefit of the class, but the mere payment of an

17   incentive award is not grounds for withholding approval.  *See Wren v. RGIS Inventory Specialists*, 2011

18   U.S. Dist. LEXIS 38667, *38 (N.D. Cal. 2011).  This enhancement award is appropriate given the

19   critical nature of his assistance in this lawsuit.  The compensation system required detailed explanations

20   to demonstrate the rest period violations and untimely commission payment, without which would have

21   caused substantially decreased value for the class.

22        Plaintiff's chosen *cy pres* beneficiary does not operate to grant improper preferential treatment to

23   Plaintiff or segments of the class either.  *See* Exhibit A § 5.6.  The Voluntary Legal Services Program of

24   Northern California Employment Law Clinic is substantially related to the objectives underlying the

25   interest of absent class members, *i.e.* providing legal advice to employees wishing to assert claims

26   against their employers and providing representation services for claims with the California Labor

27   Commissioner's office.  *See* Decl. Rodriguez ¶18; *Lane*, 696 F.3d at 820-21.  It also serves several

28   counties in California, making it extremely likely that absent class members will be able to indirectly

benefit from the *cy pres* distribution in addition to the direct monetary benefit they will receive.  *See*
Decl. Rodriguez ¶18.

### iv.  The Settlement Falls Within The Range of Possible Approval

Although a Court is not required to conduct a full fairness analysis at the preliminary approval
stage, consideration of the factors generally analyzed at final approval also inform whether this
settlement falls within the range of reasonableness and possible approval.  *See Alberto v. GMRI, Inc.,*
252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted); *Harris*, 2011 U.S. Dist. LEXIS 48878, *28-29.
To determine whether a settlement falls within the range of reasonableness a Court will consider "(1) the
strength of the plaintiffs'' case; (2) the risk, expense, complexity, and likely duration of further
litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in
settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience
and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class
members to the proposed settlement." *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir.
2004).

### A.  The Settlement is Fair and Reasonable Based on the Strength of Plaintiffs' Case and the Risks, Costs, Complexity and Likely Duration of Further Litigation

A review of the terms of the Agreement does not give rise to any doubts about its fairness.
Based on the records and facts of this case, Plaintiff has been able to secure a gross amount of
approximately 18.2% to 27.1% of the maximum possible recovery in this matter.  *See* Decl. Rodriguez
¶13.  The *net* recovery equates to approximately 11.2% to 16.6% of the maximum possible recovery.
*See id.*  The average *net* recovery for putative class members is $3,644.07 and the maximum *net*
recovery for putative class members is $15,667.81.  *See id.*  Plaintiff believes this settlement to be a
reasonable compromise of the class claims, and believe it is well within the percentile ranges of the total
available damages that have been approved in other class settlements.  *See In re Omnivision
Technologies, Inc.*, 559 F.Supp.2d 1036, 1042 (2007) (noting that certainty of recovery in settlement of
6% of maximum potential recovery after reduction for attorney's fees was higher than median
percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from 2000 through
2002); *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014) (approving a

settlement of $11.7 million where the maximum range of damages was $5,000 for each of the alleged 300,000 instances of unlawful recording violations ($1.5 billion), equaling approximately .78% of the total demand and approximately $800 per class member); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (1/6 of maximum recovery deemed adequate).  The amounts recovered represent substantial payments in light of the potential issues Plaintiff faced regarding merits and damages that may substantially reduce the amounts class members would otherwise be able to recover.  *See* Decl. Rodriguez ¶¶8-13.

Attempting to overcome the merits and damages issues would require significant amounts of time and resources and likely result in substantial protracted litigation through discovery, discovery motions, decertification motions, and appeals without significant likelihood of additional recovery for class members.  *See id.*  This settlement absolutely represents a reasonable compromise given the percentage of the total possible recovery that was secured, the average recovery per class member, the Court's ability and discretion to cut PAGA penalties, which comprised a large portion of Plaintiff's initial demand, and the uncertainty of continued protracted litigation.  *See id.*; Cal. Lab. Code § 2699(e).

### B.  Risk of Maintaining Class Action Status Through Trial

Throughout the litigation, Defendant has continually disputed the propriety of certification of Plaintiff's claims.  *See id.* at ¶9.  Although Plaintiff feels strongly that he would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not a certainty as the settlement has taken place before any rulings on certification have been made.  Thus, there is a clear risk that must be accounted for in evaluating the adequacy of the settlement.  *See id.*  Additionally, any potential certification would be subject to later appeal and potential reversal.

### C.  The Amount Offered In Settlement

As stated above, the fact that the proposed settlement is a fraction of the total amount that may possibly be recovered does not render it inadequate.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Lane*, 696 F.3d at 823.  Indeed, the average net value per class member is $3,644.07.  *See* Decl. Rodriguez ¶13.  The substantial recovery by the putative class that is well within the range of what other courts have found to be reasonable supports a finding of fairness.

//

### D. The Extent of Investigation and Discovery Completed Provided Ample Information to Enter Into an Informed and Reasonable Settlement

As stated above, the parties were in possession of all necessary information during the negotiations in Mediation.  Plaintiff engaged in informal investigation and discovery, including exchange of documents, records, and company policies, which covered all aspects of the class claims and sought information regarding the class members themselves to ensure that Plaintiff could determine liability and create an accurate damages model.  *See id.* at ¶¶8-13.  Plaintiff was in possession of this information for all class members prior to calculating the potential range of liability in this case.  *See id.* As a result, Plaintiff was able to make a reasonable estimation of Defendant's potential liability.  *See id.* For these reasons, the settlement now before the Court was reached at a stage where the parties have a clear view of the strengths and weaknesses of their cases sufficient to support the settlement.  *See Boyd,* 485 F.Supp. at 622.

### E. The Views and Experience of Plaintiffs' Counsel

Plaintiff's counsel have considerable experience in class actions and wage and hour litigation. Plaintiff's counsel have brought and are currently bringing several class actions involving employment law generally and wage and hour issues specifically, having also been approved as class counsel by numerous Courts.  Thus, Plaintiff's counsel are qualified to evaluate the class claims, value of settlement versus moving for certification and going to trial, and viability of possible affirmative defenses.  *See* Decl. Rodriguez ¶¶14-18; *Boyd,* 485 F.Supp. at 622 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness").  Plaintiff's counsel believes that the settlement is fair and reasonable in light of the complexities of the case, the uncertainties of class certification and litigation, and the secured benefit to the class.  *See* Decl. Rodriguez at ¶13.

### F. The Presence of A Governmental Participant and the Reaction of Class Members

As of the time this Motion was filed, there was not a governmental participant in the litigation. *See* Decl. Rodriguez ¶21.  However, Plaintiff's counsel will ensure that notice to the relevant state attorneys general pursuant to 29 U.S.C. § 1715 and the LWDA pursuant to Labor Code section 2699(l)

is submitted.  *See id.*; Exhibit A, § 7.10.  Information regarding the reaction of class members will be provided after notice and opportunity to respond has been provided.

### G.  Class Counsels' Attorneys' Fees and Costs Request And Request for Representative Enhancement Payments

Plaintiff will apply to the Court for an award of attorneys' fees and costs as well as representative enhancement payments and administration costs in connection with their Motion for Final Approval of the Settlement, which will take place after the class has received notice of the settlement. *See* Decl. Rodriguez ¶22.  The amounts being requested will be clearly stated in the Notice Packet, which will also direct class members how to review and object to said motion.  *See* Exhibit 1 to Exhibit A.

For the foregoing reasons, the proposed settlement falls within the range of possible final approval and should be preliminarily and conditionally approved by the Court subject to a final fairness hearing.

### d.  <u>The Notice Packet and Notice Procedures Comply With Class Members' Due Process Rights</u>

Due process requires the best notice practicable under the circumstances.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017).  The content of the notice is sufficient if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," which includes information regarding "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  *Churchill Vill., L.L.C.*, 361 F.3d at 575 (quoting *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)); Fed. R. Civ. Proc. 23(c)(2)(B).  In the present case, the proposed Notice Packet includes all required information and also expressly states the expected estimated shares class members will receive under the settlement.  *See* Exhibit 1 & 2 to Exhibit A (Proposed Notice Packet).  Furthermore, the notice procedure enlists an exhaustive, reasonable process to ensure class members receive notice of the

settlement and accounts for various unique circumstances that might affect notice. *See* Exhibit A §§ 1.11, 1.18-1.20, 4.2.1-4.2.3, 7.2-7.5.4.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully request that this Court preliminarily and conditionally approve the proposed settlement class, grant preliminary approval of the Agreement, approve the proposed form and content, and set dates for distribution of, the Class Notice, set a final fairness and settlement class certification hearing and briefing schedule therefor, set a hearing for Plaintiff's Motion for Attorneys' Fees, Costs and Representative Enhancement and briefing schedule therefor that will be heard at the same time as the final fairness and certification hearing, and adopt the implementation schedule contained in the proposed order filed concurrently herewith.


Dated: April 4 2018                                  **Shimoda Law Corp.**


By:   /s/ Justin P. Rodriguez
                                                         Galen T. Shimoda
                                                         Justin P. Rodriguez
                                                         Attorneys for Plaintiff