UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JARED ACOSTA,

    Plaintiff,

v.

EVERGREEN MONEYSOURCE MORTGAGE COMPANY, a Washington Corporation; and DOES 1 to 100, inclusive,

    Defendants.

No. 2:17-CV-00466-KJM-DB

ORDER

    Plaintiff contends his former employer, defendant Evergreen, forbids its loan originators from earning proper wages and accruing paid sick leave and vacation benefits. He sues Evergreen for wage, hour and rest break violations on behalf of himself and all similarly situated California employees. Plaintiff's unopposed motion for preliminary approval of the proposed class, proposed class counsel and claims administrator, proposed class settlement, and proposed implementation schedule is before the court. Mot., ECF No. 31. The court held a hearing on May 18, 2018. As explained below, the court GRANTS plaintiff's motion.

I.    BACKGROUND

    From September 2015 to October 2016, plaintiff worked for defendant as a Loan Originator. *See* First Am. Compl. ("FAC"), ECF No. 18, ¶ 14. Plaintiff alleges he was denied paid rest periods, sick days, and vacation time; that his wage and commissions were untimely;

1

and that he received inaccurate wage statements. *See id.* ¶¶ 14-46. Plaintiff contends these unlawful practices affected all members of the putative class, which he defines as follows:

> All employees who have, or continue to work for Defendant within California, except for those classified as outside sales employees, who were paid by commissions only or commissions in conjunction with a draw against commissions from January 24, 2013 to the Court's entry of an order preliminarily approving the class action settlement.

*See* Mot. at 12. The complaint proposed three subclasses, but plaintiff seeks now to certify only the broader class described above. *See* Stipulated Class Action Settlement and Release Agreement, Ex. A, ECF No. 34 ("Agreement") § 1.5; *see also see* FAC ¶ 10(1)-(3). On behalf of the putative class, plaintiff asserts the following five causes of action: (1) Failure to provide paid rest periods, Cal. Lab. Code § 226.7; (2) failure to pay wages at termination, *id.* §§ 201-03; (3) failure to provide accurate wage statements, *id.* § 226(a); (4) violations of the Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698, *et seq.*; (5) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-08. FAC ¶¶ 21-46.

Plaintiff filed this action in state court in January 2017. Ex. A, ECF No. 1. Defendant removed the case to federal court based on diversity jurisdiction, and the court denied plaintiff's motion to remand. *See* ECF Nos. 1, 9, 17. On March 2, 2018, after a year of informal discovery and a full day of mediation, the parties notified the court of a class settlement. ECF No. 29; Decl. of Pl.'s Counsel Justin P. Rodriguez, ECF No. 32, ¶¶ 8-13. A month later, plaintiff filed this unopposed motion to preliminarily approve the class and settlement.

II. <u>LEGAL STANDARD</u>

Rule 23 permits class action settlements "only with the court's approval" "after a hearing and on a finding" that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P 23(e). Courts certify proposed class-settlement actions in two phases. First, the court holds a preliminary fairness hearing to determine whether provisional class certification is appropriate and whether the proposed settlement is fair. Then, after all absent class members are notified about the litigation and given a chance to opt-out or object, the court holds a final fairness hearing. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Here, the court performs the preliminary step only. Although there is a strong judicial policy favoring class action settlements, *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), when a settlement is reached before class certification, the court pays close attention to any "evidence of collusion or other conflicts." *See Bluetooth*, 654 F.3d at 946 (citation omitted). This independent judicial review protects the due process rights of absent class members who have not yet appeared; this protection is particularly crucial where, as here, the settlement agreement is negotiated in their absence. *Id.* (describing fairness assessment and its motivations); *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

The burden is on plaintiff to persuade the court that the class certification and fairness requirements are satisfied. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), *as amended* (Aug. 27, 1985) ("the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied"); *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 115-CV-01474-DAD-BAM, 2016 WL 7426115, at *4 (E.D. Cal. Dec. 22, 2016) (same).

III. CLASS CERTIFICATION

The parties have stipulated to conditional class certification. Nonetheless, the court must independently scrutinize the proposed class to ensure it is provisionally appropriate for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 622 (1997).

First, the court asks if the proposed class is "precise, objective, and presently ascertainable." *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D. Cal. Apr. 19, 2010). These criteria are designed to ensure each class member is properly identified and notified about the class action. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592-93 (N.D. Cal. 2010). Here, the putative class consists of "[a]ll employees who have, or continue to work for Defendant within California, except for those classified as outside sales employees, who were paid by commissions only or commissions in conjunction with a draw against commissions." Mot. at 12. The class is also time-constrained, spanning from January 24, 2013 until the preliminary approval date. *Id.* Plaintiff estimates the class

encompasses 59 California employees. *Id.* Their proposed definition is ascertainable, precise and objective.

Next, the putative class must meet Rule 23's threshold requirements. *See* Fed. R. Civ. P. 23(a)(1)-(4), (b)(3). Rule 23 requires that the class contain enough members to warrant litigating the issues as a class rather than individually; the suit involves questions common to all class members; the proposed class representative's claims typify the class members' claims; and the proposed class representative and his counsel fairly and adequately protect class interests. Fed. R. Civ. P. 23(a)(1)-(4). Plaintiff must also show that the common class questions "predominate" over any individual member questions and that a class action is the superior method of vindicating the rights at issue. Fed. R. Civ. P. 23(b)(3).

This preliminary Rule 23 examination helps to avoid unnecessarily notifying class members of a class action later deemed improper. *See* Fed. R. Civ. P. 23(e)(1) (court must direct class member notification soon after certification). Again, plaintiff has the burden to show the putative class meets each requirement. *Mantolete*, 767 F.2d at 1424.

A. <u>Numerosity</u>

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, plaintiff need only show that joining all members of the class would be "difficult" or "inconvenient." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964) (citation omitted); <u>*Johnson v. Serenity Transp. Inc.*,</u> No. 15-CV-02004-JSC, 2018 WL 3646540, at *6 (N.D. Cal. Aug. 1, 2018) (citing *Harris*).

Here, the proposed class is 59 members. Mot. at 16. There is no numerical threshold, but courts presume classes of 40 plus members are sufficiently numerous. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citation omitted). Although 59 is on the smaller side, courts have frequently approved similar class sizes. *See Vanwagoner v. Siemens Industry, Inc.*, No. 2:13-cv-01303-KJM-EFB, 2014 WL 1922731, * 4 (E.D. Cal. May 14, 2014) (citing cases approving 39, 51, 64, and 71-member classes); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (collecting cases certifying classes of fewer than one hundred members); *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D. Wash. 1989) (certifying 50-member class);

1 | *cf. Gen. Tel. Co. Nw.*, 446 U.S. at 330 (class of fifteen would be too small). Plaintiff's 59-member putative class satisfies the numerosity requirement.

### B. Commonality, Typicality and Predominance

Plaintiff's claims must be typical of the class, and there must be "questions of law or fact common to the class" that "predominate" over individual questions. Fed. R. Civ. P. 23(a)(2), (b)(3). In essence, class litigation must, "in one stroke," resolve an issue that is central to each plaintiff's claim. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Although individual differences within a proposed class may impede common class answers, *id.*, "some variation" between individual employees and their respective damages is permissible. *Alba v. Papa John's USA*, No. CV 05-7487 GAF (CTX), 2007 WL 953849, at *10 (C.D. Cal. Feb. 7, 2007) (citations omitted) ("individual questions about the number of hours worked, wages earned, and compensation paid . . . will not defeat certification."); *see also Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (individual damages determinations do not warrant certification denial) (citations omitted).

Here, plaintiff has shown typicality, commonality and predominance. First, plaintiff's claims typify the class's claims: Plaintiff and each class member allegedly held the same position at roughly the same time, and allegedly were subjected to the same policies regarding wages, commissions, hours, rest periods, sick leave and vacation accruals. *See* Acosta Decl., ECF No. 33, ¶¶ 2-3; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (courts ask "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct") (citation and quotations omitted).

Second, the litigation poses common class questions. Plaintiff alleges five common, allegedly unlawful practices that affected every class member: (1) Unpaid rest periods; (2) unpaid wages owed at termination, which triggered waiting time penalties; (3) inaccurate wage statements that included neither the employer's full name nor the itemized rest period premiums owed; (4) no paid sick leave; and (5) delayed termination wages. *See generally* FAC.

Whether each policy violates state law is a common class question with a common class answer. *See Rica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (explaining answers to common class questions should prove the elements of the underlying claims); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014).

Third, the common class questions "predominate" over individual questions. *See* Fed. R. Civ. P. 23(b)(3). Each theory of recovery is based on defendants' alleged common practices and uniformly applied policies. Mot. at 17. The central issue is whether these standardized policies, which affected every class member, are unlawful. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (explaining predominance factor assesses whether proposed class is cohesive enough to warrant representative adjudication) (citation omitted); *Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1033 (2012) (finding similar wage and hour policy issues to be "the sort routinely, and properly, found suitable for class treatment") (citations omitted). The only individual question is how much each policy damaged a particular employee, which is "invariably an individual question and does not defeat class action treatment." *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)); *see also Leyva*, 716 F.3d at 513-514 (reversing certification denial that was based on individual damages issues).

Plaintiff has established commonality, typicality and predominance.

C. <u>Adequacy</u>

Plaintiff and plaintiff's counsel must adequately represent the class interests. *See* Fed. R. Civ. P. 23(a)(4). This factor depends on whether the named plaintiff and his counsel have vigorously pursued the action on behalf of the class, and whether they have any conflicts of interest with the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, nothing before the court suggests a conflict of interest between class members and plaintiff or plaintiff's counsel. First, plaintiff and his counsel have sworn under penalty of perjury they have no such conflicts. *See* Acosta Decl. ¶¶ 4-7; Rodriguez Decl. ¶¶ 8-13. Second, as explained above, plaintiff shares common questions and injuries with the class, which ensures a common goal. Third, plaintiff has proposed a single settlement class with all members

receiving a distribution based on the same formula, which eliminates any possible incentive to favor one subclass over another. *See* Agreement § 1.5. Fourth, plaintiff's class representative enhancement award is not conditioned on the class representatives' accepting the settlement agreement. *Id.* § 5.3. These factors together reduce the potential for any conflicts. *See Resnick v. Frank*, 779 F.3d 934, 943 (9th Cir. 2015) (finding no conflict where no structural differences in claims of representative and other class members under settlement agreement and enhancement awards not conditioned on representative's approving settlement).

Additionally, during the time this action has been pending, the court finds no reason to doubt plaintiff's vigorous representation. Plaintiff and his counsel have remained active in pursuing informal discovery and negotiations, and plaintiff's nexus and common goal with the class members described above likely will continue to motivate him. *See* Lodging Acknowledgement, ECF No. 41 (acknowledging court's receipt of both parties' mediation briefs detailing negotiations to date); *see also Resnick*, 779 F.3d at 943 (relevant inquiry" is whether plaintiff maintains "sufficient interest in, and nexus with, the class" to ensure he vigorously represents them). Lastly, plaintiff's counsel are experienced in class litigation, and several courts have previously deemed them "adequate" as class counsel in complex wage and hour class actions. *See* Rodriguez Decl. ¶¶ 14-18.

Plaintiff has established adequacy.

D. <u>Superiority</u>

A class action must also be the "superior" method of vindicating the rights at issue. Fed. R. Civ. P. 23(b)(3). This factor warrants heightened attention because class action litigation binds absent class members who may wish to adjudicate their rights in other ways. *Windsor*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). A class action may be inferior to other adjudication methods where, for instance, class members are already involved in similar litigation or otherwise have a strong interest in individually controlling the litigation, or if the class action would be difficult to manage at trial. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001). A class action may be superior, however, if it allows class members to litigate

in a beneficial forum or if it potentially earns members a larger payout than would be available individually. *See Leyva*, 716 F.3d 510.

Here, based on the record currently before the court, the class action method appears superior to other potential adjudication methods. Difficulties in managing the class action at trial are irrelevant here because this settlement class will not proceed to trial if it obtains final approval. *See Windsor*, 521 U.S. at 620. There is no indication putative class members are involved in separate litigation against the same defendant regarding similar issues. *See* Rodriguez Decl. ¶10. If left to individual litigation or adjudication, class members may reap smaller rewards than they would as part of this settlement class. *See Leyva*, 716 F.3d 510. Finally, the Eastern District appears to be the proper forum: The class is composed California workers and the claims are based on the California-based defendant's alleged violations of California law. *See* Acosta Decl. ¶2; Ex. B; Ex. A §§ 1.5, 1.6, 4.1. The superiority factor is satisfied.

E. <u>Class Certification Conclusion</u>

Having satisfied Rule 23's requirements, the motion to preliminarily certify the class is GRANTED.

IV. <u>CLASS SETTLEMENT</u>

A. <u>Legal Standard</u>

The court next considers whether the proposed settlement appears "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see also Hanlon*, 150 F.3d at 1026. In doing so, the court must examine the settlement as a whole, not each individual component. *Hanlon*, 150 F.3d at 1026 (noting settlement "must stand or fall in its entirety" and court may not "delete, modify or substitute certain provisions") (citations and quotations omitted). The court balances "the strength of the plaintiffs' case" against the risk, expense, complexity, and longevity of the further litigation; the sum offered in settlement; the stage of proceedings and extent of discovery to date; and counsels' experience and opinions. *Id.* (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

When, as here, this analysis is performed before class certification, the "dangers of collusion" and consequently "the need for additional protections" favor a "more probing inquiry

than may normally be required under Rule 23(e)." *Id.*; *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). Specifically, the court assesses whether the settlement agreement is the product of informed negotiations, free of collusion, favoritism or obvious deficiencies. *Lounibos v. Keypoint Gov't Solutions Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (citation omitted).

B. <u>Discussion</u>

The proposed agreement here satisfies the requirement for preliminary approval. Save for the reservations noted below, the court finds the record contains no indication of collusion, preferential treatment or obvious deficiencies, and the Agreement appears to be the product of informed negotiations.

The Agreement, which contemplates a $350,000.00 settlement, occurred after a year of informal discovery, contentious arm's length discussions, and a full day of mediation before an experienced, retired state judge. Rodriguez Decl. ¶¶ 8-9; *see also Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHX, 2008 WL 5281665, *9 (C.D. Cal. Dec. 15, 2008) (settlements negotiated at arm's length are presumed fair). Plaintiff's counsel Rodriguez declares he performed "substantial investigations concerning the scope of the class, their workweeks, class member employment data"; obtained pertinent documents on defendant's wage and hour policies; "create[d] an accurate damages model"; and "perform[ed] reliable calculations to determine defendant's potential exposure." Rodriguez Decl. ¶¶ 10-13.

Plaintiff and Rodriguez further declare "the proposed settlement is in the best interest of the class." *Id.* ¶¶ 7-13; Acosta Decl. ¶ 8. While acknowledging these declarations, the court notes with concern the wide discrepancy between the sum plaintiff sought going into mediation, almost $2.8 million, and the resulting settlement sum of $350,000.00. *See* Lodging Notice and noting demand made in plaintiff's mediation brief); *cf. Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 389 (C.D. Cal. 2007) (denying motion for preliminary class settlement approval in part because value of plaintiffs' claims far exceeded value of settlement). In explaining how the parties reached their settlement figure, Rodriguez states there are "risks and uncertainty" in proving both "the alleged claims on the merits" and "in proving damages." Rodriguez Decl. ¶ 9.

He further declares the settlement sum is fair in light of "the expected testimony from . . . Defendant's management personnel" as well as information revealed upon reviewing "commission reports, paystubs, Defendant's insurance policies, standard commission agreements, documents reflecting commission paid upon separation or termination . . . and other documents relating to the alleged claims." *Id.*  Finally, Rodriguez declares the proposed sum was informed by the "length and risks of trial and other normal perils of litigation that impact the value of the claims" as well as "the uncertainty of class certification, the difficulties of complex litigation, and the lengthy process of establishing specific damages and various possible delays and appeals." *Id.*

Considering "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," these assurances are sufficient to grant the pending motion at this preliminary stage. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  But the court will further scrutinize this discrepancy before any final approval. *Cf. Beidleman v. City of Modesto*, No. 1:16-CV-01100-DAD-SKO, 2018 WL 1305713, at *3 (E.D. Cal. Mar. 13, 2018) (scrutinizing discrepancy between demand and settlement at final approval; ultimately noting demand was overstated and finding settlement fair in light of "the complexity of this case and the difficulty the parties face in estimating the likely value of plaintiffs' claim without conducting an exact calculation").

Again, at this early stage, the court finds the proposed class settlement to be fair and reasonable.  This approval, however, is not without reservation.  The court reviews the core settlement terms and notes five specific concerns.

          1.      <u>Proposed Settlement Terms</u>

The proposed class settlement includes the following material terms.  Defendant agrees to pay a gross amount of $350,000 to settle all claims, excluding tax obligations. Agreement § 5.1.  Of this total, $20,000 is for plaintiff's class representative enhancement award. *Id.* § 5.3.  The Agreement reserves up to $10,000 for claim administrator fees, with the remainder reverting to the settlement fund to be divided as follows. *Id.* § 5.5.  Up to $10,000.00 will go towards the PAGA claims, three quarters of which are $7,500 will be paid to the State with the

remaining quarter of $2,500 paid to class. *Id.* § 5.4. Up to 25 percent of the total settlement award is for plaintiff's attorneys' fees, and defendant will not oppose any fee request within this threshold. *Id.* § 5.2. Up to $10,000.00 is for plaintiff's litigation costs. *Id.*

After these costs, fees and awards are paid, the remaining settlement sum, or the "net settlement" will be allocated to the class members using the following distribution formula: Each class member's number of qualifying workweeks is divided by the class's total qualifying workweeks, then that fraction is multiplied by the net settlement sum. *See id.* §§ 1.2, 1.17, 1.25, 1.26. A class member does not have to submit an individual claim to receive his or her payment. *Id.* § 5.9. Any class member that does not timely opt out will waive his or her claims for the entire class period. *Id.* §§ 1.27, 1.28, 6.1. If class members do not cash their settlement checks within 180 days of receiving them, half of those sums will be distributed to the State Treasury and half will go to the Sacramento Voluntary Legal Services Program Employment Law Clinic as the *cy pres* beneficiary. *Id.* §§ 5.6, 7.9; *see Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) ("The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries.") (citation omitted).

### 2. The Court's Reservations

As discussed at hearing, the court has the following five reservations, which must be addressed before final approval.

First, plaintiff's $20,000 enhancement award is unusually high. *See, e.g.*, *Ross v. Bar None Enterp. Inc.*, No. 2:13-CV-00234-KJM-KJ, 2014 WL 4109592, at *10 (E.D. Cal. Aug. 19, 2014) (noting concerns over $5,000 award where the settlement sum was $300,000); *Castillo v. Cox Commc'ns, Inc.*, No. 3:10-CV-01622-H, 2013 WL 12205193, at *7 (S.D. Cal. Jan. 7, 2013) (citing similar cases and noting "$2,500 incentive award is . . . well within the acceptable range"). Final approval will require a detailed explanation of how this sum is reasonable in light of the total settlement sum and class size. *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) (class representative enhancement payment much higher than payments unnamed class members stand to receive can be evidence of collusion). The court recognizes the Agreement is not contingent on the award, but final approval if granted will require substantial justification

11

detailing the basis for such a high award. Prior to final approval, the parties also should address whether this high award, and the relatively high fees discussed below, are in some way vestiges of the large demand plaintiff made going into mediation.

Second, the class administration fee, which could reach up to $10,000, is particularly high considering the class is relatively small and geographically restricted to California. *See Martinez v. Realogy Corp.*, No. 3:10-CV-00755-RCJ, 2013 WL 5883618, at *7 (D. Nev. Oct. 30, 2013) (comparing administrative fees to other cases, noting size and scope of proposed class as relevant factors); *see also Wert v. U.S. Bancorp*, No. 13-CV-3130-BAS-AGS, 2017 WL 5167397, at *4 (S.D. Cal. Nov. 7, 2017) (noting court may uphold agreement while lowering excessive fees). Final approval will require a more detailed justification for this expense.

Third, the motion for preliminary approval omits any discussion of the critical question of how the settlement amount relates to the merits of the class members' individual claims. As noted above, the court has received and examined the parties' mediation statements and is preliminarily satisfied that the agreement is reasonable and fair. *See* Lodging Acknowledgment. But final approval will require a more detailed explanation of how the parties' settlement sum relates to the merits of the case.

Fourth, the Agreement contemplates that if certain class members receive no notice packet because, for instance they are returned as undeliverable, those members will not receive a payment, yet they still will release their claims. Agreement §§ 1.27, 1.28, 6.1. This provision may not satisfy absent members' due process guarantees. *See Ross*, 2014 WL 4109592, at *10 (deciding same); *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 2013 WL 1210283, at *11 (N.D. Cal. Mar.25, 2013) (same). Before final approval, the parties should be prepared to explain how their plans comply with the fairness requirement.

Fifth, although the court preliminarily approves the 25 percent attorneys' fee provision as within the Ninth Circuit's accepted range, defendant's agreement not to oppose any motion for attorneys' fees within this range raises a red flag. Clear sailing provisions such as this can be evidence of collusion. *See Bluetooth*, 654 F.3d at 942, 947; *Ross*, 2014 WL 4109592, at

*10. Before approving any final request for attorneys' fees, the court must have enough information to determine if the requested fee is reasonable.

The court discussed the above concerns with counsel at hearing, each of which must be addressed in more detail before final approval. For now, the motion for preliminary approval is GRANTED.

V.     NOTICE

Having certified the class and preliminarily approved the settlement, the court must now "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice must, in plain language, state the nature of the action, define the certified class, and list the class claims, issues, or defenses. *Id.* The notice must also inform members that they may appear at the final hearing with counsel; that they may request to be excluded from the class, including how and when to request exclusion; and the details as to how the class judgment may bind each member. *Id.*; *see also Mendoza v. United States*, 623 F.2d 1338, 1351-52 (9th Cir. 1980).

Here, the court has reviewed the proposed notice packet and finds it conforms with due process and Rule 23(c)(2)(B). *See* Exs. 1 & 2, ECF No. 34. The content of the proposed notice is adequate, as it describes the settlement terms, informs the class about the allocation of attorneys' fees, estimates the share each class member will receive and, once completed, will specify the date, time and place of the final approval hearing. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126-27 (E.D. Cal. 2009). The notice procedure also appears reasonable and it fully explains to recipients how they may object or opt out of the proposed settlement. *See* Agreement §§ 1.11, 1.18-1.20, 4.2.1-4.2.3, 7.2-7.5.4. The proposed delivery method, by mail, is likewise appropriate. *Mendoza*, 623 F.2d at 1351-52 (noting court's "wide discretion" as to whether notice is adequate); *Ross*, 2014 WL 4109592, at *13 (finding mail was appropriate delivery method).

The court APPROVES the proposed notice packet and procedures and DIRECTS notice to be administered according to the schedule described below.

13

## VI. SCHEDULE

The court adopts the parties' stipulated schedule, ECF No. 35, as follows:

(1) Within two weeks of this order, defendant must submit class member information to the claims administrator;

(2) Within two weeks of receiving this information from defendants, the claims administrator must complete all class member address searches, update all mailing information, and mail all notice packets;

(3) Class members must postmark their opt-out, disputes, objections, and data requests (a) within 90 days after receiving timely notice; or (b) within 15 days of the notice period ending if notice was untimely;

(4) Within two weeks of the members' opt-out, dispute and objection deadline, plaintiffs must file their anticipated motion to approve attorneys' fees and costs, representative enhancements, and claims administrator costs;

(5) Within three weeks of the end of the notice period, the claims administrator must provide parties with both (a) a list of all class members who have timely requested to opt-out and (b) a signed declaration reporting on settlement administration;

(6) Within two weeks of the final approval hearing, plaintiffs must file all documents supporting final approval of the class action settlement;

(7) Within a week of the final approval hearing, the claims administrator must calculate and report to the parties the amounts owed to fund the settlement, employer tax payments, net settlement amount, and claim amounts for qualified claimants;

(8) After the final approval hearing and within two weeks of the claims administrator's calculation, defendant must fund the settlement and employer tax payments;

(9) Within one week of receiving defendant's funds, the claims administrator must deliver payment of class counsel's attorneys' fees and costs, enhancement payments, PAGA Payment, settlement administration costs and payment to qualified claimants;

(10) Qualified members must cash settlement checks within 180 days of receipt;

(11) Should checks not be cashed on time, the claims administrator will have two weeks from the 180-day deadline to deliver the value of uncashed settlement checks to the named *cy pres* beneficiary;

(12) The final approval hearing is set for **November 2, 2018**, at 10:00 AM in Courtroom 3, with briefs and supporting documentation due by **October 19, 2018**. Class members that timely object using the procedures detailed above may present their objections in person at the fairness hearing, with counsel if so desired.

VII. <u>CONCLUSION</u>

As explained above, the court preliminarily CERTIFIES the class; preliminarily APPROVES the class settlement; APPOINTS Jared Acosta as class representative; APPOINTS Galen T. Shimoda and Justin P. Rodriguez of the Shimoda Law Corp. as class counsel; APPOINTS Simpluris, Inc., as claims administrator; APPROVES the notice, briefing and hearing schedule as described above; and DIRECTS notice to the putative class members in the time and manner proposed.

IT IS SO ORDERED.

This order resolves ECF No. 31.

DATED: August 10, 2018.

_____
UNITED STATES DISTRICT JUDGE