Galen T. Shimoda (Cal. State Bar No. 226752)
Justin P. Rodriguez (Cal. State Bar No. 278275)
**Shimoda Law Corp.**
9401 East Stockton Blvd., Suite 200
Elk Grove, CA  95624
Telephone: (916) 525-0716
Facsimile: (916) 760-3733
Email: attorney@shimodalaw.com
          jrodriguez@shimodalaw.com

Attorneys for Plaintiff JARED ACOSTA

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED ACOSTA, | **Case No. 2:17-cv-00466-KJM-DB** |
| Plaintiff, | **CLASS ACTION** |
| vs. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| EVERGREEN MONEYSOURCE MORTGAGE COMPANY, a Washington Corporation; and DOES 1 to 100, inclusive, | |
| Defendants. | Date:       February 8, 2019 |
| | Time:       10:00 a.m. |
| | Crtm:      3, 15th Floor |
| | Judge:     Hon. Kimberly J. Mueller |
| | Filed:        January 24, 2017 |
| | FAC Filed:  August 11, 2017 |
| | Trial Date:   None Set |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m., on February 8, 2019, or as soon after as the matter can be heard, on the 15th Floor in Courtroom 3 of the United States Eastern District Court of California, 501 I Street Sacramento, California 95814, Plaintiff Jared Acosta, individually and on behalf of all other similarly situated employees, will, and hereby does, move for entry of an Order for the following:

1.  Approving and certifying the proposed class herein for purposes of settlement;

2.  Approving and appointing Plaintiff Jared Acosta as class representative for purposes of settlement;

3.  Approving and appointing the Shimoda Law Corp. as class counsel for purposes of settlement;

4.  Approving the proposed class action and Private Attorneys General Act settlement, which is filed as Exhibit A to this Motion and incorporated herein by reference;

5.  Approving the appointment of Simpluris, Inc. as the class action settlement administrator;

6.  Approving the notification procedures and the form and content the Notice of Proposed Class Action Settlement, and Hearing Date for Final Court Approval of Settlement and Disbursement Form ("Class Notice") as satisfying class members' due process rights;

7.  Approving that for any portion of the Net Settlement Amount allocated to class members that was not claimed by class members by cashing their respective settlement checks before the deadline to do so, that residue will be paid out in the following manner: (a) 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund; (b) 25% to the State Treasury for deposit into the Equal Access Fund of the Judicial Branch; and (c) 50% to the Sacramento Voluntary Legal Services Program Employment Law Clinic as the *cy pres* beneficiary; and

8.  Approving and adopting the Proposed Order and its implementation schedule, which is filed herewith and incorporated by reference.

This motion is being made pursuant to Federal Rule of Civil Procedure 23 and California Labor Code section 2699(l) on the grounds that the preliminarily approved class action and Private Attorneys General Act settlement is fair, reasonable, and adequate as to all class members and should be given final approval by the Court.  This motion will be based on the notice of motion, memorandum of points and authorities, the Declaration of Justin P. Rodriguez, the Declaration of Lindsay Kline, exhibits, the record and files of this case, and any further oral or documentary evidence introduced at the hearing of this motion.

Pursuant to Section 4 of Hon. Kimberly J. Mueller's Standing Order issued on March 3, 2017, Plaintiff's counsel hereby certifies that the parties have met and conferred regarding this Motion and the

need for it to be filed pursuant to the Federal Rules of Civil Procedure regarding approval of class action settlements and pursuant to the Private Attorneys General Act ("PAGA") requiring Court review and approval of PAGA settlements.

Dated: January 25, 2019                    **Shimoda Law Corp.**


                              By:    /s/ Justin P. Rodriguez
                                   Galen T. Shimoda
                                   Justin P. Rodriguez
                                   Attorneys for Plaintiff

# TABLE OF CONTENTS

I. Introduction and Opening Summary of Argument ...................................................1

II. Procedural and Litigation History.........................................................................2

III. Investigation and Discovery Conducted ...............................................................3

IV. Negotiation and Proposed Settlement ...................................................................4

    a. Plaintiff and Defendant Engaged in Extensive Arm's Length Negotiations ..............4

    b. The Terms of the Settlement................................................................4

    c. Allocation of Settlement Funds ...........................................................6

V. CAFA Settlement Notice, Preliminary Approval, and Settlement Administration ...............6

VI. Argument ...............................................................................................7

    a. Class Action Settlements And PAGA Settlements are Subject to Court Review and Approval...............................................................................7

    b. Certification of the Settlement Class is Appropriate ........................................8

        i. Numerosity...............................................................................9

        ii. Commonality, Typicality, and Predominance .................................9

        iii. The Adequacy Requirement is Met ...........................................11

        iv. Superiority...........................................................................13

    c. Adequate Notice was Provided............................................................14

    d. The Agreement Should Be Given Final Approved Because The Terms of The Agreement Are Fair, Reasonable, and Adequate to All Class Members........................................... ...................................15

        i. The Settlement is Fair and Reasonable Based on the Strength of Plaintiff's Case and the Risks, Costs, Complexity and Likely Duration of Further Litigation...........................................................................16

        ii. Risk of Maintaining Class Action Status Through Trial ..............17

        iii. The Amount Offered In Settlement .........................................17

        iv. The Extent of Investigation and Discovery Completed Provided Ample Information to Enter Into an Informed and Reasonable Settlement ...........18

        v. The Views and Experience of Plaintiff's Counsel.......................19

        vi. The Presence of A Governmental Participant and the Reaction of Class Members ...........................................................................19

        vii. Additional Concerns Noted By The Court..................................19

VII. Conclusion ...........................................................................................20

1

**TABLE OF AUTHORITIES**

2

**CALIFORNIA CASES**

3 *Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal.4th 1004 (2012) ........................................ 11

4 *Lubin v. Wackenhut Corp.,* 5 Cal.App.5th 926 (2016) ................................................ 11

5 *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98 (2017) ................................ 11

6

**CALIFORNIA STATUTES AND OTHER AUTHORITIES**

7 Cal. Labor Code section 204................................................................................................ 1

8 Cal. Labor Code section 226 ............................................................................................ 11

9 Cal. Labor Code section 432 .............................................................................................. 1

10 Cal. Labor Code sections 2699 ..........................................................2, 7, 16-17, 19

11 Cal. Labor. Code section 2699.3........................................................................................ 7

12 Cal. Code of Civil Procedure section 384(b) ..................................................................... 5

13

**FEDERAL CASES**

14 *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007)...................................... 9

15 *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012) .........................12-13

16 *Alba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079 (C.D. Cal. 2007) ................... 10

17 *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ............................................................. 8

18 *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008) ........................................ 17

19 *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ......................................................... 13

20 *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) .............. 8

21 *Beidleman v. City of Modesto*, 2018 U.S. Dist. LEXIS 41240 (E.D. Cal. 2018) ............ 17

22 *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ........................ 8

23 *Bluford v. Safeway Inc.*, 216 Cal.App.4th 864 (2013) ................................................. 11

24 *Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D. Cal. 1979) .................................8, 13, 19

25 *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ............................... 14, 15

26 *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) ...................................... 15

27 *In re Conagra Foods, Inc.*, 90 F.Supp.3d 919 (C.D. Cal. 2015) ...............................9, 14

28 *Dirks v. Layton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125 (D. Minn. 1985) ....... 14

1  *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454 (9th Cir. 2000) .................. 16

2  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........................................................ 8

3  *Fleming v. Covidien, Inc.*, 2011 U.S. DIST. LEXIS 154590 (C.D. Cal. 2011)............................... 18

4  *Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128 (N.D. Cal. 2013) .................................... 10

5  *Garcia v. City of King City*, 2017 U.S. Dist. LEXIS11552 (N.D. Cal. 2017) .................................... 8

6  *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579 (S.D. Cal. 2010) .................................................... 10

7  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................. 8, 9

8  *Harris v. Vector Marketing*, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal. 2012)................................. 12

9  *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D. Cal. 2005).......................... 13

10 *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. 2012) ........................... 9, 11

11 *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ................................................................. 8, 17

12 *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999)............................................................. 13

13 *Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) ............................................... 10, 14

14 *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231 (N.D. Cal. 2014).............................................................. 9

15 *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .................................................... 17

16 *Martinez v. Realogoy Corp.*, Corp. 2013 WL 5883618 (D. Nev. 2013)........................................... 20

17 *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422 (S.D.N.Y. 1994)........................ 13

18 *Messineo v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 26456 (N.D. Cal. 2017).............. 9

19 *Mendoza v. Hyundai Motor Co.*, 2017 U.S. Dist. LEXIS 9129 (N.D. Cal. 2017)............................. 9

20 *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036 (2007) .................................................. 16

21 *Pena v. Taylor Farms Pac., Inc.,* 305 F.R.D. 197 (E.D. Cal. 2015) ................................................ 11

22 *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010)...................................................................... 15

23 *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014) .................................. 16

24 *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934 (9th Cir. 2015) .......... 11

25 *Rica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) .................................................... 9

26 *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006) ..................................... 9

27 *Ross v. Bar None Enterp. Inc.*, 2014 WL 4109592 (E.D. Cal 2014)................................................ 20

28 *Sakkab v. Luxottica Retail N. Am., Inc.,* 803 F.3d 425 (9th Cir. 2015) ........................................... 10

*Sciortino v. PepsiCo, Inc.*, 2016 U.S. Dist. LEXIS 83937 (N.D. Cal. 2016) ...................................... 8

*In re Scorpion Techs., Inc. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21413 (N.D. Cal. 1994) ................... 9

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) .................................................................................. 14

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012) ........................................ 17

*Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 66436 (N.D. Cal. 2006) ...................................... 10

*United Steel, Paper & Forestry, Rubber, Mfg. v. ConocoPhillips Co.*,

       593 F.3d 802 (9th Cir. 2010) ............................................................................................ 10

*Walsh v. CorePower Yoga LLC*, 2017 U.S. Dist. LEXIS 163991 (N.D. Cal. 2017) ........................ 14

*Wright v. Linkus Enters.*, 259 F.R.D. 468 (E.D. Cal. 2009) ............................................................. 14

*Wixon v. Wyndham Resort Dev. Corp.*, 2009 U.S. Dist. LEXIS 100451 (N.D. Cal. 2009) .......... 8, 10

**FEDERAL STATUTES AND OTHER AUTHORITIES**

29 U.S.C. § 1715 ........................................................................................................................... 6, 19

Fed. R. Civ. Proc. 23 ................................................................................... 7, 8, 12, 13, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND OPENING SUMMARY OF ARGUMENT

This Motion is brought seeking final approval of a wage and hour class action and Private Attorneys General Act ("PAGA") settlement in the total gross amount of $350,000.00, which is exclusive of Defendant Evergreen Moneysource Mortgage Company's ("Defendant"), tax obligations on any monies allocated as wages. *See generally* Exhibit A (Joint Stipulation Regarding Class Action Settlement and Release). Plaintiff Jared Acosta ("Plaintiff") brought this class action and PAGA action on behalf of himself and other similarly situated employees employed by Defendant seeking unpaid wages, penalties, and interest. *See generally* Exhibit B (Plaintiff's First Amended Complaint).

This lawsuit is based on Plaintiff's contention that Defendant's policies and practices violated California law, including the following alleged policies and practices: 1) Defendant's commission/draw compensation system did not directly compensate class members for rest periods and, therefore, Defendant failed to provide legally compliant paid rest periods to class members; 2) Defendant's failure to provide directly compensated rest periods caused unpaid wages to be owed at termination, triggering waiting time penalties; 3) Defendant failed to provide accurate wage statements as they did not contain the complete, full name of the employer and did not itemize rest period premiums owed; 4) Defendant's commission compensation system failed to provide paid sick leave to class members; 5) Defendant failed to pay all contract wages owed under the terms of its commission agreements, improperly imposing funding requirements before commissions would be paid; 6) Defendant failed to pay all wages timely at the time of termination due to its sending final wage payments from its Washington headquarters; 7) Defendant failed to timely pay wages by paying earned commission at a time during a subsequent pay period that exceeded the allowable time limits under Labor Code section 204; and 8) Defendant required class members to enter into commission agreement that contained unlawful terms in violation of Labor Code section 432. *See generally* Exhibit B; Exhibit C (Plaintiff's March 21, 2017 Ltr. to the Labor and Workforce Development Agency). Plaintiff contends that he has filed a meritorious class action lawsuit and that this case is appropriate for class certification for settlement purposes as the requisites for class certification in this case can be satisfied and the terms of the settlement are fair, reasonable, and adequate as to all class members. *See* Exhibit A; Exhibit B.

Defendant has denied all of Plaintiff's allegations in their entirety and any liability or wrongdoing of any kind. *See* Declaration of Justin P. Rodriguez ("Decl. Rodriguez"), ¶7. Defendant has contended, among other things, that its compensation system paid employees for all hours worked, including time spent during rest periods and sick leave. *See id.*

However, subject to final approval by the Court, Plaintiff and Defendant have been able to reach a class and PAGA settlement as a result of discovery, litigation, negotiations, and a mediation conducted by the Hon. Ronald M. Sabraw (Ret.). *See* Exhibit A. Plaintiff is convinced that the proposed settlement is in the best interest of the class considering the discovery, litigation, and negotiations that have occurred. *See* Decl. Rodriguez ¶¶7-13. The uncertainty of obtaining and maintaining class certification, difficulties of complex litigation, risks and uncertainty in proving the alleged claims on the merits, risks and uncertainty in proving damages, the potential for protracted litigation and various possible delays and appeals, and the recommendations and analysis of the mediator were carefully considered by Plaintiff counsel in agreeing to the proposed settlement. *See id.*

It is well within the discretion of this Court to grant final approval of the preliminarily approved settlement, which satisfies all of the criteria for final settlement approval under federal law. There have been **zero objections** to, and **zero opt-outs** from, this preliminarily approved settlement, demonstrating it to be an absolutely reasonable compromise of the disputed claims that deserves final approval. Accordingly, Plaintiff requests that the Court: (1) certify the settlement class; (2) grant final approval of the preliminarily approved Joint Stipulation Regarding Class Action Settlement and Release ("Agreement"); (3) adopt the implementation schedule contained in the proposed order.

## II.    PROCEDURAL AND LITIGATION HISTORY

On November 16, 2016, Plaintiff sent notice pursuant to California Labor Code sections 2699 *et seq.* to the California Labor and Workforce Development Agency ("LWDA") to exhaust administrative remedies under the PAGA. The notice alleged facts and theories to support PAGA claims for failure to provide paid sick leave, failure to pay contract wages, failure to provide itemized statements, waiting time penalties, and untimely payment of wages. An amended notice was sent to the LWDA on March 21, 2017 alleging violation of the prohibition against illegal contract terms and failure to provide legally compliant rest periods. The LWDA did not respond within the statutory period to any of the provided

notices, authorizing Plaintiff to act as Private Attorney General under the PAGA statute.  *See* Decl. Rodriguez ¶5; Exhibit C.

Plaintiff filed a Complaint on January 24, 2017 in the California Superior Court for the County of Sacramento.  Defendant removed the case to the United States District Court for the Eastern District of California on approximately March 2, 2017.  Plaintiff filed a First Amended Complaint on approximately August 11, 2017 alleging class actions claims.  *See* Decl. Rodriguez ¶6; Exhibit B.  The parties engaged in discovery through substantial informal data exchanges that included the number of class members, the dates of employment for class members, total earnings of class members during the claim period, average rates of pay for class members, insurance documents, commission reports, paystubs, documents reflecting commission paid upon separation or termination, relevant handbook excerpts, and other documents relating to the alleged claims.  *See* Decl. Rodriguez ¶9.  After an analysis of this information, its impact on certification, the asserted claims and damages, and a full day of mediation, the parties were able to reach a mutually agreeable settlement.  *See* Decl. Rodriguez ¶¶8-9.

On approximately September 6, 2018, Plaintiff's counsel submitted an ex parte application to delay notice to the class because it appeared Plaintiff no longer wished to fulfill the role of class representative moving forward at that time.  *See* Doc. No. 46 at 2:1-5.  It also appeared that Plaintiff was attempting to opt-out of the litigation to potentially broker an individual settlement.  *See* Doc. No. 49 at 1:5-1:12.  After hearing, and pursuant to the Court's Order, Plaintiff's Counsel provided notice to Plaintiff that to the extent he wished to make any objection to, opt out of, or otherwise respond to the preliminary approved settlement, he may, and had the right to, seek independent counsel.  *See* Doc. Nos 51 & 53.  No actions were ultimately taken by Plaintiff in this regard and no actions have been taken that negatively affect the class or settlement.  *See* Decl. Rodriguez ¶20.

## III.    INVESTIGATION AND DISCOVERY CONDUCTED

Plaintiff and Plaintiff's counsel thoroughly investigated the potential for obtaining and maintaining certification, the merits of the claims, and the potential damages for such claims.  *See* Decl. Rodriguez ¶¶8-13; Doc. No. 33, ¶¶4-5.  This included review of the standard commission agreements that were the basis for Plaintiff's claims.  Plaintiff experienced all policies and practices that gave rise to the asserted claims.  *See generally* Exhibit B; Doc. No. 33, ¶3.

The parties engaged in substantial investigations concerning the scope of the class, their workweeks, class member employment data (commission reports and paystubs), wage and hour policies, and also performed other document review and factual and legal analysis regarding each aspect of the underlying claims. *See* Decl. Rodriguez ¶10. The discovery covered the number of class members, their workweeks, all relevant wage and hour policies and practices at issue, and average rates of pay for class members. *See id.* The information Plaintiff produced and obtained from Defendant enabled Plaintiff to create an accurate damages model and perform reliable calculations to determine Defendant's potential exposure if Plaintiff were successful on certification and at trial. *See id.* at ¶¶10-13.

## IV.    NEGOTIATION AND PROPOSED SETTLEMENT

### a.    Plaintiff and Defendant Engaged in Extensive Arm's Length Negotiations

The final settlement occurred only after extended, contentious arm's length negotiations. For over one year, Plaintiff has been investigating the claims and discussing with Defendant's counsel the merits of the claims and certification issues present in this case. *See id.* at ¶¶8-13. The parties attended mediation utilizing the services of mediator Hon. Ronald M. Sabraw (Ret.), on February 21, 2018 to attempt to resolve the claims. *See id.* ¶8. The parties ultimately did not resolve the matter on that day. *See id.* Further discussions facilitated by Judge Sabraw occurred after the mediation that resulted in the parties reaching an agreement in principle to resolve the claims for the amount of $350,000.00 and later enter into the Agreement. *See id.*

### b.    The Terms of the Settlement

Under the Agreement, Defendants have agreed to the following:

1.    The scope of the settlement class will include all employees who have, or continue to work for Defendant within California, except for those classified as outside sales employees, who were paid by commissions only or commissions in conjunction with a draw against commissions from January 24, 2013 to the Court's entry of an order preliminarily approving the class settlement. *See* Exhibit A, §§ 1.5, 1.6, 4.1. The settlement class shall not include any person who submits a timely and valid request to opt-out as provided in the Agreement. *See id.* at § 4.1.

2.    Pay $350,000.00 in addition to any monies necessary to satisfy Defendant's tax obligations (*e.g.* employer FICA, FUTA and SDI contributions on wage payments) on any monies

1  distributed to class members that are allocated as wages under the Agreement. *See id.* at § 5.1. No

2  portion of this amount will revert to Defendant for any reason. *See id.* at § 5.6.

3    3.    The parties agree that up to $20,000.00 for Plaintiff Jared Acosta will be paid as a Class

4  Representative Enhancement Award in addition to any amount he may be entitled to under the terms of

5  the settlement. *See id.* at § 5.3. Any monies not so awarded will be redistributed to the class pro rata.

6  *See id.*

7    4.    The parties agree that the cost of administering this class action settlement shall be paid

8  from the settlement proceeds. *See id.* at § 5.5.

9    5.    The parties agree that $10,000.00 of the settlement proceeds will be allocated to PAGA

10 claims. *See* Exhibit A, § 5.4. The settlement class will receive 25% of this amount (*i.e.*, $2,500), which

11 will be included in the class payout, and the LWDA will receive 75% of this PAGA penalty (*i.e.*,

12 $7,500). *See id.*

13    6.    The parties agree that up to twenty-five percent (25%) of the Gross Settlement Payment,

14 *i.e.* $87,500.00, will be paid for Plaintiff's attorneys' fees and Defendant will not oppose any application

15 for attorneys' fees so long as it is within this threshold. *See id.* at § 5.2. Additionally, the parties agree

16 that Plaintiff will also be entitled to litigation costs not to exceed $10,000.00. *See id.* The difference

17 between the amount of attorneys' fees and costs awarded and the maximum amounts allocated therefor

18 under the Agreement will be redistributed to class members pro rata. *See* Exhibit A, § 5.2

19    7.    Any class action administrator fees, any amounts paid for attorneys' fees and costs, class

20 representative enhancements, and payment to the LWDA will be paid out from the Gross Settlement

21 Amount ($350,000.00), not in addition to the Gross Settlement Amount. *See id.* at § 5.1.

22    8.    Class members who fail to timely opt out of this settlement will waive any and all claims

23 that were pled in the Action for all periods of time the class member worked during the class period.

24 *See id.* at §§ 1.27, 1.28, 6.1.

25    9.    For any residue from settlement checks that were not cashed within one hundred and

26 eighty (180) days of issuance, this amount will be paid out pursuant to Code of Civil Procedure section

27 384(b), in the following manner: (a) 25% to the State Treasury for deposit in the Trial Court

28 Improvement and Modernization Fund; (b) 25% to the State Treasury for deposit into the Equal Access

Fund of the Judicial Branch; and (c) 50% to the Sacramento Voluntary Legal Services Program

Employment Law Clinic as the cy pres beneficiary. *See* Exhibit A, §§ 5.6, 7.9.

### c. Allocation of Settlement Funds

Allocation of the settlement funds is based on the number of Qualifying Workweeks a class

member worked. *See id.* at §§ 1.2, 1.17, 1.25, 1.26, 5.9, 7.8.1. To the extent a class member worked

less or more than an exact number of weeks and/or less than one week, a fraction of a week applicable to

that class member will also be determined (*e.g.* one of seven days, two of seven days, etc.). *See id.*

Each individual class member's share will be determined by taking the Qualifying Workweeks for the

individual and dividing that by the total Qualifying Workweeks for all class members and multiplying

that fraction by the Net Settlement Amount (*i.e.* the Gross Settlement Amount less attorneys' fees and

costs, administration costs, the class representative enhancement awards, and the payment to the

LWDA). *See id.* at § 5.9. Payment will not require the submission of any claim form. *See id.* Half of

the amount paid to class members will be characterized as W2 wages and half of the amount paid to

class members will be characterized as 1099 income. *See id.* at § 5.8.

## V.    CAFA SETTLEMENT NOTICE, PRELIMINARY APPROVAL, AND SETTLEMENT ADMINISTRATION

In accordance with 28 U.S.C. § 1715, Plaintiff sent notice to the U.S. Attorney General and

State Attorney Generals (or the entity otherwise designated by the state for such notices) for those

states in which class members reside on April 11, 2018. *See* Exhibit D (April 11, 2018 CAFA Notice

Ltrs.). The letters contained information regarding the proposed settlement, preliminary and final

approval hearing dates, the pleadings, the estimated shares for the individuals residing in that state, and

information for how the further information may be obtained and developments monitored. *See id.*

Plaintiff's motion for preliminary approval of class action settlement was approved by the Court

on August 13, 2018. To comply with the class members' due process rights and in accordance with the

Court's Order, the parties enlisted an exhaustive method to ensure the best practical means possible was

used to provide notice to the class. *See* Supplemental Declaration of Lindsay Kline Regarding Notice

and Settlement Administration ("Decl. Kline") ¶¶5-9. The parties provided the class action

administrator the names, last known address, social security numbers, and other information necessary

for the administration of the settlement. The class action administrator then sought the most recent address using the National Change of Address database search. *See id.* at ¶¶6-7. The Court approved Class Notice, which was mailed to class members on September 20, 2019. *See id.* at ¶¶8; Exh. A to Decl. Kline. A copy of the signed preliminary approval order was also mailed to the U.S. and State Attorney Generals on September 25, 2018. *See* Exhibit E (Sept. 25, 2018 CAFA Ltrs. Re Signed Order).

If the Class Notice packets were returned as undeliverable, further investigation and skip traces were performed and they were re-mailed using updated information. *See* Decl. Kline ¶ 9. Of the 75 Class Notice packets mailed, 1 was, and remains, undeliverable after the use of these methods. *See id.* The Class Notice packets included information regarding the nature of this lawsuit, the claims made, the amount to be paid to class members, the releases participating class members were subject to, the requested attorneys' fees and costs, the payments to the LWDA, the administration costs, the tax allocations, and the representative service award payment information. *See* Exh. A to Decl. Kline. Additionally, the Class Notice, settlement agreement, entire preliminary approval motion, and attorneys fees and costs motion documents and orders thereon were made easily available on Plaintiff's Counsels' website via clickable link on the homepage. *See* *https://shimodalaw.com/news/AcostaJared_12-12-18.pdf.* After providing this notice to the class, State Attorney Generals, and U.S. Attorney General, there have been **zero objections and zero opt-outs,** ***i.e.*** **a 100% participation rate**. *See* Decl. Kline ¶¶13-14. Based on the updated class information, the average distribution to class members will be $2,692.36. *See* Decl. Kline ¶12. The maximum distribution to a class member will be $13,387.10. *See id.*

## VI.    ARGUMENT

### a.    Class Action Settlements And PAGA Settlements are Subject to Court Review and Approval

A class action may not be dismissed, compromised, or settled without Court approval and the decision to approve or reject a settlement is committed to the Court's sound discretion. *See* Fed. R. Civ. Proc. 23(e). Similarly, settlements under the PAGA require Court review and approval. *See* Cal. Lab. Code § 2699(l). Where the class settlement is reached prior to class certification "courts must peruse the

1  proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."

2  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015).  Final Court approval

3  of a class settlement also requires that adequate notice of the proposed settlement must be provided to

4  class members.  *See Garcia v. City of King City*, 2017 U.S. Dist. LEXIS11552, *9-10 (N.D. Cal. 2017).

5  Additionally, it must be found that the settlement "is fundamentally fair, adequate, and reasonable."  *See*

6  *id.* at *10.  However, courts should give "proper deference to the private consensual decision of the

7  parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated

8  between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

9  that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

10  parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

11  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696

12  F.3d 811, 819 (9th Cir. 2012); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979).  There is a

13  "strong judicial policy that favors settlement, particularly where complex class action litigation is

14  concerned."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

15  **b.  Certification of the Settlement Class is Appropriate**

16  To proceed as a class action it must be found that "(1) the class is so numerous that joinder of all

17  members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

18  defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

19  representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. Proc.

20  23(a).  Additionally, in cases seeking certification under Federal Rules of Civil Procedure 23(b)(3), the

21  questions of law or fact must predominate over questions affecting individual members and a class

22  action must be superior to other methods for fairly and efficiently adjudicating the controversy.  *See* Fed.

23  R. Civ. Proc. 23(b)(3); *Sciortino v. PepsiCo, Inc.*, 2016 U.S. Dist. LEXIS 83937, *10 (N.D. Cal. 2016).

24  Public policy favors the use of class actions such that "[a]ny doubts regarding the propriety of class

25  certification should be resolved in favor of certification."  *Wixon v. Wyndham Resort Dev. Corp.*, 2009

26  U.S. Dist. LEXIS 100451, *5 (N.D. Cal. 2009); *Allen*, 787 F.3d at 1223.  It is a procedural question; it

27  does not ask whether an action is legally or factually meritorious.  *See Amgen, Inc. v. Connecticut Ret.*

28  *Plans & Trust Funds*, 133 S. Ct. 1184, 1194-1195 (2013); *Ellis v. Costco Wholesale Corp.*, 657 F.3d

970, 983 n.8 (9th Cir. 2011).  The parties agree that, for the purposes of settlement, the class should be certified.  *See* Exhibit A, § 5.11.

The Court preliminarily certified the settlement class on August 13, 2018.  As will be shown below, nothing occurred during the settlement administration process that would merit any change to the Court's preliminary certification decision.  *See Garcia*, 2017 U.S. Dist. LEXIS 11552, *12-13; *Messineo v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 26456, at *9-10 (N.D. Cal. 2017); *Mendoza v. Hyundai Motor Co.*, 2017 U.S. Dist. LEXIS 9129, at *13 (N.D. Cal. 2017).  In fact, there have been **zero objections and zero opt-outs** in this matter, showing there is no reason to question the propriety of the Court's prior certification decision.  *See* Decl. Kline ¶¶13-14.  Thus, the certification decision should remain unchanged.

### i.  Numerosity

A class with more than forty putative members is presumed to satisfy the numerosity prerequisite.  *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006); *In re Scorpion Techs., Inc. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21413, *10 (N.D. Cal. 1994).  In the present case, there are approximately 75 class members, which exceeds what other Courts have found to be sufficient for satisfying the numerosity requirement.  *See id.*; *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) ("[C]ourts have consistently held that joinder is impracticable in cases involving more than 35 parties . . .").  Thus, the numerosity requirement is satisfied in this case.

### ii.  Commonality, Typicality, and Predominance

The commonality element is construed liberally, not requiring every issue of law or fact to be common.  *See In re Conagra Foods, Inc.*, 90 F.Supp.3d 919, 972-73 (C.D. Cal. 2015); *Hanlon*, 150 F.3d at 1019-20; *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328, *17 (C.D. Cal. 2012).  Similarly, the typicality element is permissively construed, only requiring the representative's claims to be "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.

The question of predominance begins with the elements of the underlying cause of action and then considers whether those elements are capable of being proven by answers to questions common to the class.  *See Rica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011); *Lilly v. Jamba*

*Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014); *Wixon*, 2009 U.S. Dist. LEXIS 100451, *20-21.  The existence of "some variation among the individual employees . . . do not defeat predominance."  *See Alba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079, *30 (C.D. Cal. 2007).  This is especially true where the focus of the conduct alleged to be unlawful is on the defendant.  *See Alba*, 2007 U.S. Dist. LEXIS 28079, *31 (finding that while an overtime exemption was a fact intensive inquiry, it does not defeat predominance due to the actual focus on defendant's conduct).  For example, the presence of unlawful policies or practices will support a finding of predominance.  *See, e.g., Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 66436 (N.D. Cal. 2006).  Challenges to Plaintiff's legal theories and doubts regarding Plaintiff's ability to prove the claims at trial are irrelevant to determining predominance.  *See United Steel, Paper & Forestry, Rubber, Mfg. v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010).  Similarly, Courts have found that "individual questions about the number of hours worked, wages earned, and compensation paid . . . will not defeat certification."  *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 595 (S.D. Cal. 2010).  Nor will individualized damages issues act as a basis to deny certification.  *See Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013) (reversing a denial of certification based on individual issues in determining damages).

In the present case, questions of law or fact are not only common to the class, they also predominate over any potential individualized issues.  Each of Plaintiff's theories of recovery are based on alleged common practices of Defendants or their alleged uniformly applied policies (or lack thereof): 1) Defendant's commission compensation system did not directly compensate class members for rest periods and, therefore, Defendant failed to provide legally compliant paid rest periods to class members; 2) Defendant's failure to provide directly compensated rest periods caused unpaid wages to be owed at termination, triggering waiting time penalties; 3) Defendant failed to provide accurate wage statements as they did not contain the complete, full name of the employer and did not itemize rest period premiums owed; 4) Defendant's commission compensation system failed to provide paid sick leave to class members; 5) Defendant failed to pay all wages timely at the time of termination due to its sending final wage payments from its Washington headquarters.[1]  *See* Exhibit B.

---

[1] The remaining of Plaintiff's claims arise under the PAGA, which does not require certification pre-requisites to be met.  *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015); *Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128, 1137 (N.D. Cal. 2013).

Claims similar to Plaintiff's have been found to be sufficient for class certification in several cases. *See, e.g., Bluford v. Safeway Inc.*, 216 Cal.App.4th 864, 873 (2013) (certifying rest period class based on claims the piece rate system did not directly compensate for this time); *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98, 108-114 (2017) (applying *Bluford* to commission pay systems). Certification on these theories will also support certification of waiting time penalty and wage statement claims as derivative violations. *See, e.g. Jimenez*, 2012 U.S. Dist. LEXIS 65328, *67-68; *Lubin v. Wackenhut Corp.,* 5 Cal.App.5th 926, 958-960 (2016) ("First, the question whether Wackenhut's wage statements contained the required elements under Labor Code section 226, subdivision (a) is a common question, and Labor Code section 226, subdivision (e)(2)(B)(i) clarifies that injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect . . . Second, because plaintiffs' meal and rest period claims are suitable for class treatment, their theory that the wage statements failed to include premium wages earned for missed meal and rest periods also is suitable for class treatment"); *Pena v. Taylor Farms Pac., Inc.,* 305 F.R.D. 197, 223 (E.D. Cal. 2015) ("Because the claims of this subclass [regarding waiting time penalties] that may proceed are entirely derivative of the meal break claims of the mixed hourly worker subclass, they meet or fail to meet the commonality and predominance requirements to the same extent"); It is the lawfulness of Defendants' policies and practices themselves that are at issue, which renders certification appropriate. *See Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal.4th 1004, 1033 (2012) (finding such determinations to be "the sort routinely, and properly, found suitable for class treatment").

Plaintiff's claims are typical of the class members claims. *See* Exhibit B. Plaintiff was subjected to, and experienced, the same policies and practices being alleged to be unlawful. *See id.* As a result, the basis for his claims and the types of remedies sought will be similar amongst all class members. Plaintiff's claims are, therefore, reasonably co-extensive with those of absent class members. *See id.*

### iii.  The Adequacy Requirement is Met

To determine adequacy, answers to the following questions must be given: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *See Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 943 (9th Cir. 2015) (finding no

conflict because there were no structural differences in the claims of the representative and other class members under the settlement agreement and the enhancement awards were not conditioned on the representatives approval of the settlement).  As to the second question, "[t]he relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation."  *See id.*  In the present case, the Agreement has no structural conflicts as there is only one settlement class (no subclasses) and all members of the class are subject to the same distribution formula, so Plaintiff had no incentive to favor one subclass over another.  *See id.* at 943; Exhibit A, at §§ 1.5, 5.3.  Additionally, there is also no conditioning of the representative enhancement award on Plaintiff's supporting or approving the Agreement.  *See id.*  Neither Plaintiff nor his counsel have any conflicts with the putative class and have conducted an exhaustive review and analysis of the claims to obtain a beneficial result for the class.  *See* Decl. Rodriguez ¶¶8-13; Doc. No. 33 at ¶6.  For the same reasons discussed above regarding typicality, Plaintiff shares a common nexus of legal and factual issues with the class on the asserted claims, ensuring they have the same interest in pursuing the most beneficial results possible in this case.  Additionally, Plaintiff's counsel are experienced and have been found by several Courts to be adequate class counsel in numerous complex wage and hour class actions.  *See id.* at ¶¶14-18.

Although there was delay in mailing notice to the class as a result of Plaintiff indicating that he no longer wished to fulfill the role of class representative, this took place after substantial litigation, including preliminary approval, occurred and after the settlement at issue was entered into.  *See* Decl. Rodriguez ¶20.  Thus, Plaintiff was deemed an adequate representative for the relevant time period in which the matter was being actively litigated and negotiated.  *See Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012) ("The court previously certified classes in this matter under Rule 23(b)(3) (ECF No. 70), so need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)."); *Harris v. Vector Marketing*, 2012 U.S. Dist. LEXIS 13797 at *7 (N.D. Cal. 2012) ("As a preliminary matter, the Court notes that it previously certified...a Rule 23(b)(3) class...[and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable").  Indeed, the favorable terms of the settlement demonstrate it is the result of hard fought and vigorous representation

by Plaintiff and his counsel. *See Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 622 (S.D. Cal. 2005) ("It is, ultimately, in the settlement terms that the class representatives' judgment and the adequacy of their representation is either vindicated or found wanting. If the terms themselves are fair, reasonable and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter equally comprised of conjecture and irrelevance").

Having been apprised of the issues and being given the relevant case law, the Court ordered the parties to proceed with the notifying the class of the settlement. To do otherwise in the face of potential objections to the settlement by class representatives would provide improper incentive to hold reasonable and fair class settlements hostage for potential personal gain of the class representative. *See Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (N.D. Cal. 1979) ("Nor should a settlement be rejected merely because class plaintiffs oppose it") *Adoma*, 913 F.Supp.2d at 979-981; *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 591 (3d Cir. 1999) (affirming order approving settlement of class action and denying lead plaintiff's objections and motions for certification of subclass and disqualification of class counsel); *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1429–30 (S.D.N.Y. 1994) (holding that settlement was fair, adequate, and reasonable despite objections from class representatives and some class members); Manual for Complex Litigation § 21.642 (4th ed.). In the present case, no steps were ultimately taken by Plaintiff to object or opt out of the settlement, leaving no affect whatsoever on the class settlement. *See* Decl. Rodriguez ¶20. Thus, Plaintiff and Plaintiff's counsel are adequate representatives of the settlement class members.

### iv.  Superiority

Factors relevant to determining whether the class action is superior includes "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . ." Fed. R. Civ. Proc. 23(b)(3). Where certification is for settlement purposes only, considerations regarding manageability are irrelevant. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Additionally, where there is relatively few or no other lawsuits concerning the same issues

being litigated by members of the putative class, this favors a finding that a class action is superior.  *See Dirks v. Layton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125 (D. Minn. 1985).  In the present case, class certification would be superior to alternative forms of adjudication.  First, Plaintiff has uncovered no evidence of any separate lawsuits being filed by class members against Defendant litigating the same or similar issues.  *See* Decl. Rodriguez ¶10.  Second, there may be only relatively small awards at stake for class members if they were to attempt individual litigation, which supports a superiority finding.  *See Leyva*, 716 F.3d 510.  Third, the class is composed of individuals working in California, asserting claims based on California substantive law, and Defendant held offices within California, including the Eastern District, which supports the desirability of concentrating the litigation in the Eastern District.  *See* Exhibit B; Exhibit A §§ 1.5, 1.6, 4.1.

For the reasons set forth above, the Court should affirm its decision to certify the settlement class as all the prerequisites of Rule 23(a) and the additional requirements of Rule 23(b)(3) are satisfied.

### c.  <u>Adequate Notice Was Provided</u>

As part of its August 13, 2018 Order, the Court noted concern with the potential that class members may not receive a notice packet, but still would release their claims even though they do not receive any direct payment.  *See* Doc. No. 43 at 12:18-12:24.  It is not required that class members be given actual notice of the settlement; instead, "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort" is all that is required.  *See* Fed. R. Civ. Proc. 23(c)(2)(b); *Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017); *Walsh v. CorePower Yoga LLC*, 2017 U.S. Dist. LEXIS 163991, at *12-14 (N.D. Cal. 2017); *Wright v. Linkus Enters.*, 259 F.R.D. 468, 474-75 (E.D. Cal. 2009).  In *Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994), the Court rejected a class member's argument that he had not received due process because he did not receive notice until after the opt out period, finding that, so long as the notice process utilized is the best practicable under the circumstances, due process is satisfied even if there is no actual receipt of the notice.  *See Silber*, 18 F.3d at 1453-1454.  A similar finding was made in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), which further noted that those class members who did not receive actual notice may still receive benefits from the settlement through a cy pres distribution.  *See Briseno*, 844 F.3d at 1129.

Directly to the point of the single undeliverable notice packet at issue in this case, the Court in *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) found that class members who did not receive actual notice due to their mailings being deemed undeliverable were still properly held to be part of the class settlement because they received the best notice practicable under the circumstances.  *See Rannis v. Recchia*, 380 F. App'x at 650-651.

The notice method in *Rannis* was similar to that used in the present case.  For example, the Court approved Class Notice contained all information necessary for a class member to assess the litigation, the settlement, and whether they wanted to participate, object, or opt-out.  *See* Exh. A to Decl. Kline.  The claims administrator utilized a national change of address database, forwarding notices, and skip tracing in an effort to ensure that all reasonable means were exhausted in attempting to provide class members notice of this settlement.  *See* Decl. Kline ¶¶ 5-9.  In addition to this individualized notice, Plaintiff's counsel prominently posted all settlement material and motion documents on their website.  *See* Decl. Rodriguez ¶ 19.  The content of the notice provided and the manner in which it was provided to class members provided the best practicable notice to satisfy due process.  *See* Fed. R. Civ. Proc. 23(c)(2)(b); Exh. A to Decl. Kline.  Furthermore, as noted in *Briseno*, class members, including the individual whose packet was deemed undeliverable, will receive indirect benefit through the *cy pres* distribution in this case.

### d.  The Agreement Should Be Given Final Approval Because The Terms of The Agreement Are Fair, Reasonable, and Adequate to All Class Members

To determine whether a settlement is fair, reasonable, and adequate Court will consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).

//

//

//

1

2

       **i.**      **The Settlement is Fair and Reasonable Based on the Strength of Plaintiff's Case and the Risks, Costs, Complexity and Likely Duration of Further Litigation**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

      A review of the terms of the Agreement does not give rise to any doubts about its fairness. Based on the records and facts of this case, Plaintiff has been able to secure a gross amount of approximately 14.4% to 21.3% of the maximum likely recovery in this matter. *See* Decl. Rodriguez ¶13. The *net* recovery equates to approximately 9.1% to 13.5% of the maximum likely recovery. *See id.* The average *net* recovery for putative class members is $2,962.36 and the maximum *net* recovery for putative class members is $13,387.10. *See* Decl. Kline ¶ 12. Plaintiff believes this settlement to be a reasonable compromise of the class claims, and believe it is well within the percentile ranges of the total available damages that have been approved in other class settlements. *See In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1042 (2007) (noting that certainty of recovery in settlement of 6% of maximum potential recovery after reduction for attorney's fees was higher than median percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from 2000 through 2002); *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014) (approving a settlement of $11.7 million where the maximum range of damages was $5,000 for each of the alleged 300,000 instances of unlawful recording violations ($1.5 billion), equaling approximately .78% of the total demand and approximately $800 per class member); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (1/6 of maximum recovery deemed adequate). The amounts recovered represent substantial payments in light of the potential issues Plaintiff faced regarding merits and damages that may substantially reduce the amounts class members would otherwise be able to recover. *See* Decl. Rodriguez ¶¶8-13.

22

23

24

25

26

27

28

      Attempting to overcome the merits and damages issues would require significant amounts of time and resources and likely result in substantial protracted litigation through discovery, discovery motions, decertification motions, and appeals without significant likelihood of additional recovery for class members. *See id.* This settlement absolutely represents a reasonable compromise given the percentage of the total possible recovery that was secured, the average recovery per class member, the Court's ability and discretion to cut PAGA penalties, which comprised a large portion of Plaintiff's initial demand, and the uncertainty of continued protracted litigation. *See id.*; Cal. Lab. Code § 2699(e).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ii.    Risk of Maintaining Class Action Status Through Trial

Throughout the litigation, Defendant has continually disputed the propriety of certification of Plaintiff's claims.  *See id.* at ¶9.  Although Plaintiff feels strongly that he would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not a certainty as the settlement has taken place before any rulings on certification have been made.  Thus, there is a clear risk that must be accounted for in evaluating the adequacy of the settlement.  *See id.*  Additionally, any potential certification would be subject to later appeal and potential reversal.

### iii.    The Amount Offered In Settlement

As part of its August 13, 2018 Order, the Court requested further information of how the settlement amount relates to the merits of the class member's individual claims.  *See* Doc. No. 43, 12:12-12:24.  The fact that the proposed settlement is a fraction of the total amount that may possibly be recovered does not render it inadequate.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Lane*, 696 F.3d at 823.  There are several factors render the amount offered in settlement to be reasonable and appropriate notwithstanding it is a fraction of the maximum likely trial value of the claims.  First, while aggressive advocacy and negotiation tactics may counsel mediation damage calculations to assume no risk of loss and the inapplicability of case law potentially limiting the amount of damages available, that is not the appropriate standard against which to determine the reasonableness of a final settlement number.  *See Beidleman v. City of Modesto*, 2018 U.S. Dist. LEXIS 41240, *3 (E.D. Cal. 2018) (finding overstated demand was not the appropriate comparison for the reasonableness of the settlement at issue).

Plaintiff's Counsel has provided detailed calculations, and the basis therefor, for the value of the asserted claims.  *See* Decl. Rodriguez ¶¶12-13.  While Plaintiff's initial damages calculates assumed a "subsequent violation" penalty valuation would occur for all penalty claims, *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008) presents a real and difficult challenge to support that valuation absent a prior Court or Labor Commissioner decision finding the practices were unlawful.  *See Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1209 (2008).  Additionally, Plaintiff's initial calculations assumed no reduction of PAGA penalties would occur despite a Court's statutory authority to do so.  *See* Cal. Lab. Code § 2699(e).  This discretion is regularly exercised.  *See Thurman v. Bayshore Transit Mgmt.*,

1    *Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (30% reduction); *Fleming v. Covidien, Inc.*, 2011 U.S. DIST.

2    LEXIS 154590, *9 (C.D. Cal. 2011) (82% reduction).  Plaintiff's calculations of the settlement's value

3    provide the comparative values on either end of the PAGA range.  *See* Decl. Rodriguez ¶12. Beyond

4    these two reductions, Plaintiff's calculations presented to the Court assume a 100% recovery rate based

5    on the dates of employment and rates of pay for class members.  *See* Decl. Rodriguez ¶¶12-13.  This is

6    despite the fact that a good faith dispute defense, if successful, would entirely eliminate the value of

7    waiting time penalties (and associated PAGA penalties) and there is likely less than a 100% violation

8    rate for rest period claims (*i.e.* if no rest period was taken at the choice of the employee then there is no

9    unpaid rest period and, therefore, no rest period premium to be paid). *See* Decl. Rodriguez ¶13.  There is

10   significant risk of this as the type of compensation system in this case (commission) favors employees

11   continuing to work and many may have elected to simply forgo their rest periods.  *See id.*  Furthermore,

12   a single factual finding that the reconciliation of commissions in fact happened above the minimum

13   wage threshold as opposed to below that threshold (and therefore causing unpaid time), would entirely

14   eliminate the damages based on non-productive time, *i.e.* rest periods and derivative violations based

15   thereon.  *See id.*  Based on these risks and available damages, the amount ultimately settled for when

16   compared to the amount of maximum likely damages counsels a finding that the settlement is a

17   reasonable compromise.  The substantial recovery by the putative class is well within the range of what

18   other courts have found to be reasonable supports a finding of fairness.

19

20              **iv.    The Extent of Investigation and Discovery Completed Provided Ample
                        Information to Enter Into an Informed and Reasonable Settlement**

21              As stated above, the parties were in possession of all necessary information during the

22   negotiations in Mediation.  Plaintiff engaged in informal investigation and discovery, including

23   exchange of documents, records, and company policies, which covered all aspects of the class claims

24   and sought information regarding the class members themselves to ensure that Plaintiff could determine

25   liability and create an accurate damages model.  *See id.* at ¶¶8-13.  Plaintiff was in possession of this

26   information for all class members prior to calculating the potential range of liability in this case.  *See id.*

27   As a result, Plaintiff was able to make a reasonable estimation of Defendant's potential liability.  *See id.*

28   For these reasons, the settlement now before the Court was reached at a stage where the parties have a

1  clear view of the strengths and weaknesses of their cases sufficient to support the settlement.  *See Boyd,*

2  485 F.Supp. at 622.

3          v.      **The Views and Experience of Plaintiff's Counsel**

4          As set forth in the declarations supporting Plaintiff's Counsels' Motion for Attorneys' Fees and

5  Costs, Representative Enhancement, and Settlement Administrator Costs, Plaintiff's counsel have

6  considerable experience in class actions and wage and hour litigation.  Plaintiff's counsel have brought

7  and are currently bringing several class actions involving employment law generally and wage and hour

8  issues specifically, having also been approved as class counsel by numerous Courts.  Thus, Plaintiff's

9  counsel are qualified to evaluate the class claims, value of settlement versus moving for certification and

10  going to trial, and viability of possible affirmative defenses.  *See* Decl. Rodriguez ¶¶14-18; *Boyd*, 485

11  F.Supp. at 622 ("The recommendations of plaintiffs' counsel should be given a presumption of

12  reasonableness").  Plaintiff's counsel believes that the settlement is fair and reasonable in light of the

13  complexities of the case, the uncertainties of class certification and litigation, and the secured benefit to

14  the class.  *See* Decl. Rodriguez at ¶13.

15          vi.     **The Presence of A Governmental Participant and the Reaction of Class**
                    **Members**
16

17          Plaintiff's counsel have submitted notice to the U.S. and State Attorneys General pursuant to 29

18  U.S.C. § 1715 and the LWDA pursuant to Labor Code section 2699(l) is submitted.  *See id.*; Exhibit A,

19  § 7.10.  More than the required 90 days have passed for giving notice and none have sought to

20  intervene or comment upon this settlement.  *See* Decl. Rodriguez ¶17.  Also, the reaction of the class

21  provides overwhelming support for the settlement.  To date, there is a **100% participation rate with**

22  **zero objections and zero opt-outs by class members.**  *See* Decl. Kline ¶¶13-14.  For the foregoing

23  reasons, the preliminarily approved settlement is fair, reasonable, and adequate, and should be given

24  final approval by the Court.

25          vii.    **Additional Concerns Noted By The Court**

26          As part of its August 13, 2018 Order, the Court also noted concerns with the amount of the class

27  administration costs, the size of the representative enhancement, and stated it would need further

28  information to justify any fee award.  *See* Doc. No. 43, 11:19-11:25, 12:4-12:10, 12:25-13:2.  Plaintiff

has submitted a separate motion to substantiate the attorneys fees and costs, enhancement award, and claims administrator fees, which gives detailed information and argument to support the requested amounts. With regard to the administrator fees, $10,000 was selected to account for any unforeseen issues that might arise in administration above the original quote given of $5,134.00. *See* Decl. Rodriguez ¶17. The amount ultimately billed is comparable to those cases cited by the Court. *See Martinez v. Realogoy Corp.*, Corp. 2013 WL 5883618, at *7 (D. Nev. 2013) (citing cases that included a $141.00 per class member cost of administration).

An additional point to raise regarding the requested enhancement as compared to that approved in *Ross v. Bar None Enterp. Inc.*, 2014 WL 4109592 (E.D. Cal 2014) is that the defendant admitted liability in *Ross*. *See Ross*, 2014 WL 4109592, at *16. The burdens undertaken and value contributed to a case by a class representative are considerably less when a defendant has admitted liability, making the case one of only damages. Contrary to that scenario, Defendant heavily contested all matters in this litigation and Plaintiff's participation substantially furthered the ability to secure a large settlement for the class.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully request that this Court grant final approval of the settlement as fair, reasonable, and adequate, certify the settlement class, find that notice to the class members met all due process requirements, and adopt the implementation schedule contained in the proposed order granting final approval filed concurrently herewith.


Dated: January 25, 2019                          **Shimoda Law Corp.**


                                        By:    /s/ Justin P. Rodriguez
                                            Galen T. Shimoda
                                            Justin P. Rodriguez
                                            Attorneys for Plaintiff