UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED ACOSTA,<br><br>       Plaintiff,<br><br>     v.<br><br>EVERGREEN MONEYSOURCE<br>MORTGAGE COMPANY, a Washington<br>Corporation; and DOES 1 to 100,[1]<br>inclusive,<br><br>       Defendant. | No. 2:17-cv-00466-KJM-DB<br><br><br>ORDER |

       In separate motions, plaintiff Jared Acosta moves for (1) final approval of the class action settlement, (2) an incentive award and (3) an award of attorneys' fees and costs. Mot. Fees, ECF No. 54; Mot. Approval, ECF No. 56. On February 8, 2019, the court held a hearing on the matter. ECF No. 58. Justin Rodriguez appeared for plaintiff; Tiffany Tran appeared for defendant Evergreen Moneysource Mortgage Company. For the reasons explained below, the court GRANTS both motions.

---

[1] More than sufficient time has passed for plaintiff to specifically identify additional defendants, without having done so. Doe defendants are hereby dismissed from this action. *See Wilcox v. Batiste*, 360 F. Supp. 3d 1112, 1126 (E.D. Wash. 2018) (dismissing Doe defendants from putative class action where plaintiff made no effort to identify such defendants).

1

I.     BACKGROUND

Plaintiff brings this wage and hour class action and representative action under the Private Attorneys General Act ("PAGA").  *See* Rodriguez Approval Decl., ECF No. 56-1, ¶ 2. Plaintiff, a Loan Originator for defendant Evergreen from September 2015 to October 2016, *see* First Am. Compl. ("FAC"), ECF No. 18, ¶ 14, alleges that defendant engaged in unfair competition; failed to provide paid rest periods and sick leave, pay contract wages, timely pay wages, timely pay final wages, and provide legally compliant paystubs; and required class members to enter into unlawful agreements.  Rodriguez Approval Decl. ¶ 2.  Plaintiff initiated this action on January 24, 2017, in Sacramento County Superior Court.  *See* Notice of Removal, ECF No. 1, at 11.  Defendant removed to this court on March 2, 2017.  *Id.* at 1–5.  Plaintiff filed an amended complaint on August 11, 2017, which serves as the operative complaint here.  *See generally* FAC.  Defendant "vigorously contested all aspects of the case," *id.* at 3; however, the parties were nonetheless able to reach a class and PAGA settlement of this matter, after extensive discovery, litigation, negotiations, and mediation.  Mot. Approval at 2.  On August 13, 2018, the court preliminarily certified the class, appointed class counsel and a claims administrator, preliminarily approved the class settlement agreement, and set forth a notice and administration schedule.  *See generally* Prelim. Approval Order, ECF No. 43.

A.      Preliminary Settlement Approval

As a functional matter, a review of a proposed class action settlement generally involves two hearings: (1) an initial hearing to determine whether certification and preliminary approval of the settlement is justified and, (2) after notice has been provided to the class, a final fairness hearing to determine whether final approval is appropriate.  Manual for Complex Litig., Fourth § 21.632 (2004).  The court held the preliminary approval hearing on May 18, 2018, and as noted issued the approval order thereafter.  *See* ECF No. 39; Prelim. Approval Order.  In so doing, the court preliminarily certified the following class, as stipulated by the parties:

> All employees who have, or continue to work for Defendant within California, except for those classified as outside sales employees, who were paid by commissions only or commissions in conjunction

with a draw against commissions from January 24, 2013 to the Court's entry of an order preliminarily approving the class action settlement.

Prelim. Approval Order at 2. The court also preliminarily approved the following settlement terms: (1) defendant to pay $350,000 to settle all claims, excluding tax obligations; (2) from that total, $20,000 is designated for plaintiff's class representative enhancement award; (3) up to $10,000 is reserved for claim administrator fees, with any remaining balance reverting to the settlement fund and divided as described in the settlement agreement; (4) after payment of costs, fees and awards, the remaining settlement sum will be allocated to the class members according to the distribution formula described in the parties' agreement. *Id.* at 10–11.

      B.    <u>Reservations in the Preliminary Approval Order</u>

Although the court preliminarily approved certification of the class, the court also expressed "five reservations, which must be addressed before final approval." *Id.* at 11.

First, the court noted that, comparatively, "plaintiff's $20,000 enhancement award is unusually high." *Id.* (collecting cases). Final approval of this amount would "require substantial justification detailing the basis for such a high award"; the court required the parties to address whether this amount, and the related fee discussed below, are "vestiges of the large demand plaintiff made going into mediation." *Id.* at 12. Second, the court expressed concerns with the administrative fee, up to $10,000, which "is particularly high considering the class is relatively small and geographically restricted to California." *Id.* The court signaled further justification would be required for it to approve this expense. Third, the parties were required to provide more detail as to how the settlement sum relates to the merits of the case. *Id.* Fourth, prior to final approval, the court required the parties to explain the fairness of their proposal that members ultimately receiving no notice packet will not receive payment, yet will still release their claims. *Id.* Finally, in light of defendant's agreement to not oppose any motion for attorneys' fees within the twenty-five percent range, the court required additional information to allow it to assess any collusion concerns raised by this "clear sailing" provision and ensure the requested fee is reasonable. *Id.* at 12–13.

With these reservations and observations in mind, the court proceeds to determine whether to grant final approval of the settlement on a class basis.

II.     THE SETTLEMENT AGREEMENT

The terms of the final settlement agreement are set forth in detail in the motion for final approval, *see* Mot. Approval at 4–6, and are largely reproduced here:

- Defendant agrees that the scope of the settlement class will include all employees who have, or continue to work for defendant within California, except for those classified as outside sales employees, who were paid by commissions only or commissions in conjunction with a draw against commissions from January 24, 2013 to the court's entry of an order preliminarily approving the class settlement. *See* Ex. A, ECF No. 56-3, §§ 1.5, 1.6, 4.1. The settlement class shall not include any person who submits a timely and valid request to opt-out as provided in the agreement. *Id.* at § 4.1.

- Defendant agrees to pay $350,000.00 in addition to any monies necessary to satisfy defendant's tax obligations (e.g., employer FICA, FUTA and SDI contributions on wage payments) on any monies distributed to class members that are allocated as wages under the agreement. *Id.* at § 5.1. No portion of this amount will revert to defendant for any reason. *Id.* at § 5.6.

- The parties agree that up to $20,000.00 for plaintiff Jared Acosta will be paid as a class representative enhancement award in addition to any amount he may be entitled to under the terms of the settlement. *Id.* at § 5.3. Any monies not so awarded will be redistributed to the class pro rata. *Id.*

- The parties agree that the cost of administering this class action settlement shall be paid from the settlement proceeds. *Id.* at § 5.5.

- The parties agree that $10,000.00 of the settlement proceeds will be allocated to PAGA claims. *Id.* at § 5.4. The settlement class will receive twenty-five percent of this amount (i.e., $2,500), which will be included in the class payout, and the California Labor and Workforce Development Agency ("LWDA") will receive seventy-five percent of this PAGA penalty (i.e., $7,500). *See id.*

4

- The parties agree that up to twenty-five percent of the gross settlement payment, i.e., $87,500.00, will be paid toward plaintiff's attorneys' fees and defendant will not oppose any application for attorneys' fees so long as the amount is within this threshold. *Id.* at § 5.2. Additionally, the parties agree plaintiff will also be entitled to litigation costs not to exceed $10,000. *Id.* The difference between the attorneys' fees and costs the court actually awards and the maximum amounts allocated therefor under the agreement will be redistributed to class members pro rata. *Id.* at § 5.2.

- Any class action administrator fees, attorneys' fees and costs, class representative enhancements, and payment to the LWDA will be paid out from the gross settlement amount ($350,000.00), not in addition to the gross settlement amount. *Id.* at § 5.1.

- A class member who fails to timely opt out of this settlement will waive any and all claims that were pled in the action for all periods of time the class member worked during the class period. *Id.* at §§ 1.27, 1.28, 6.1.

- For any residue from settlement checks not cashed within one hundred and eighty (180) days of issuance, this amount will be paid out as provided by Code of Civil Procedure section 384(b), in the following manner: (a) twenty-five percent to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund; (b) twenty-five percent to the State Treasury for deposit into the Equal Access Fund of the Judicial Branch; and (c) fifty percent to the Sacramento Voluntary Legal Services Program Employment Law Clinic as the *cy pres* beneficiary. *Id.* at §§ 5.6, 7.9.

Each class member's fund allocation is determined by the number of "Qualifying Workweeks" that class member worked. Mot. Approval at 6. Imprecise or fractional workweeks will also be included. *Id.* Each individual share is determined by "taking the Qualifying Workweeks for the individual and dividing that by the total Qualifying Workweeks for all class members and multiplying that fraction by the Net Settlement Amount." *Id.* Claim forms are not required to receive payment, and payments will be characterized as half W-2 wages and half 1099 income. *Id.*

The court next addresses the legal standard required for final certification of the class, followed by an application to the specific facts of this case.

III.    CLASS CERTIFICATION

A party seeking to certify a class must demonstrate the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The court must undertake the Rule 23 inquiry independently. *West v. Circle K Stores*, No. 04–0438, 2006 WL 1652598, at *2 (E.D. Cal. June 12, 2006).

Under Rule 23(a), before certifying a class, the court must be satisfied that: (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" inquiry). *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011); Fed. R. Civ. P. 23(a).

Where, as here, plaintiff seeks certification under Rule 23(b)(3), the court must find also that "'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (quoting Fed. R. Civ. P. 23(b)(3)). The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A)–(D); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–92 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

In its prior order, the court preliminarily certified the proposed class, finding it initially satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a) and 23(b)(3), albeit with some reservations as stated above. *See* Prelim. Approval Order at 3–8. After the court preliminarily certified the class, a question arose regarding class plaintiff's continued role in this action; that question has been resolved as explained below, and there have been no objections to final certification. *See* Joint Statement, ECF No. 49; Status Order, ECF No. 52; Rodriguez Approval Decl. ¶ 20. Nothing before the court suggests the preliminary certification was improper.

For purposes of final approval, the court determines whether the class ultimately satisfies Rule 23, especially in light of the court's prior reservations. The court first examines the four requirements of Rule 23(a) and then turns to the considerations relevant to certification under Rule 23(b)(3).

A.    Numerosity

In its order granting preliminary approval, the court found the putative class met the numerosity requirement because the 59-member class, although small, fell within the acceptable range. Prelim. Approval Order at 4–5 (citing *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)); *see also Vanwagoner v. Siemens Indus., Inc*., No. 2:13-cv-01303-KJM-EFB, 2014 WL 1922731, * 4 (E.D. Cal. May 14, 2014) (citing cases approving 39, 51, 64 and 71-member classes). As the class size has since grown to approximately 75 members, *see* Mot. Approval at 9, there is no reason for the court to depart from its prior finding. The numerosity requirement is satisfied here.

B.    Commonality

In preliminarily approving the class, the court found the class met the commonality requirement because plaintiff alleged five unlawful practices by which all class members were injured. Prelim. Approval Order at 5–6. This reasoning remains true, and the commonality requirement is satisfied for final approval.

To satisfy the commonality requirement, however, plaintiff must do more than show class members "have all suffered a violation of the same provision of law." *Dukes*, 564

U.S. at 350.  A class claim must depend upon a common contention that "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of those claims in one stroke."  *Id.*  It is not so much that the class raises common questions; what is necessary is "the capacity of a class-wide proceeding to generate common answers . . . ."  *Id.* (citation omitted).  "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

As plaintiff argues, "each of [his] theories of recovery are based on alleged common practices of Defendants or their alleged uniformly applied policies (or lack thereof)."  Mot. Approval at 10.  The court's preliminary approval order describes these "common practices" as: (1) unpaid rest periods; (2) unpaid wages owed at termination, which triggered waiting time penalties; (3) inaccurate wage statements that included neither the employer's full name nor the itemized rest period premiums owed; (4) no paid sick leave; and (5) delayed termination wages.  *See* Prelim. Approval Order at 5.  Commonality exists here because these practices "challenge[] a system-wide practice or policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005).

For this reason, the commonality element is satisfied.

C.    Typicality

Here, the typicality requirement also is satisfied.  "[T]he commonality and typicality requirements of Rule 23(a) tend to merge" because both act "as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Dukes*, 564 U.S. at 350 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 & n.13 (1982)).  A court resolves the typicality inquiry by considering "whether other members have the same or similar injury,

whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984.

As explained in the preliminary approval order, "plaintiff's claims typify the class's claims [because] [p]laintiff and each class member allegedly held the same position at roughly the same time, and allegedly were subject to the same policies regarding wages, commissions, hours, rest periods, sick leave and vacation accruals." Prelim. Approval Order at 5. Because of this, "the basis for [plaintiff's] claims and the types of remedies sought [are] similar amongst all class members." Mot. Approval at 11. On these grounds the typicality requirement is satisfied. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class.").

D.     Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although predominance is similar to Rule 23(a)'s commonality requirement, it is more demanding. *Id.* at 624. To determine whether common questions predominate, the court must consider "the relationship between the common and individual issues" by looking at the questions that pre-exist any settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338. Additionally, the predominance inquiry focuses on the "notion that adjudication of common issues will help achieve judicial economy." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009).

As explained in the preliminary approval order, the legality of defendant's standardized policies is central to the claims of all class members, and the only individual questions involve the degree to which each class member was harmed by those policies. Prelim. Approval Order at 6. Because "[t]he amount of damages is invariably an individual question and does not defeat class action treatment," there is no reason for the court to depart from its preliminary finding. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (alteration in original). Indeed, the nature of the settlement agreement here "sufficiently

demonstrates that '[a] common nucleus of facts and potential legal remedies dominates this litigation.'" *Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *8 (E.D. Cal. Nov. 27, 2012) (quoting *Hanlon*, 150 F.3d at 1022). Were class members to assert their claims individually, rather than together as here, the same allegations—unpaid rest periods, unpaid wages owed at termination, inaccurate wage statements, no paid sick leave and delayed termination wages—would remain consistent across all class members. The existence of slight factual distinctions, such as precise hours worked, does not diminish the predominance of the common legal claims amongst them. *See id.* at *9 (holding that despite factual differences among class members, common issues predominate). Therefore, the predominance requirement is met.

E.     Adequacy

To determine whether the named plaintiff will protect the interests of the class, the court must explore two factors: (1) whether the named plaintiff and counsel have any conflicts of interest with the class as a whole, and (2) whether the named plaintiff and counsel vigorously pursued the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.

The preliminary approval order found that "nothing before the court suggests a conflict of interest between class members and plaintiff or plaintiff's counsel." Since that time, however, the court was called on to address a potential conflict involving plaintiff. On September 6, 2018, the parties advised the court that plaintiff no longer wished to fulfill his role as class representative and was contemplating a potential opt-out to negotiate a more favorable settlement for himself. *See* Joint Statement; Status Order; Rodriguez Approval Decl. ¶ 20. The court held a hearing on the matter and ordered class counsel to advise plaintiff of his rights as a class member and his right to seek independent counsel should he desire. *See* Status Hr'g Min., ECF No. 50; Status Order. Counsel complied with that order. *See* Confirmation Notice, ECF No. 51; Rodriguez Approval Decl. ¶ 20. Since then, "[p]laintiff has taken no actions . . . to pursue these matters and no actions have been taken that negatively affect the class or settlement." Rodriguez Approval Decl. ¶ 20. Because it appears the potential conflict with plaintiff never materialized, the court is satisfied that the adequacy requirement is met.

The parties have undergone "substantial litigation" in order to reach a settlement agreement, and the terms of the agreement "demonstrate it is the result of hard fought and vigorous representation by Plaintiff and his counsel." Mot. Approval at 12–13. As explained in further detail below, plaintiff has been involved in all stages of the litigation, including investigation of claims, preparation of complaints, production of evidentiary documents, inclusion in the discovery and pleading process and involvement in negotiations. *See* Mot. Fees at 16. The settlement agreement establishes a single class with no subclasses, with a singular interest among the class members; all members are subject to the same distribution formula. *Id.* at 12. This structure provides no incentive for plaintiff to favor one subclass over another and the representative enhancement is not conditioned upon his approval of the settlement agreement. *Id.* Finally, the adequacy of plaintiff's representation of the class is further supported by class counsel's experience handling complex wage and hour class actions. *Id.* ("Plaintiff's counsel . . . have been found by several Courts to be adequate class counsel in numerous complex wage and hour class actions."). Taken together, the court is satisfied that plaintiff's role as class representative adequately represents the interests of the class.

F.      Superiority

In resolving Rule 23(b)(3)'s superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating the litigation in one forum and potential difficulties in managing the class action, although the last two considerations are not relevant in the settlement context. *Schiller v. David's Bridal, Inc*., No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012) ("In the context of settlement, however, the third and fourth factors are rendered moot and are not relevant.") (citing *Amchem*, 521 U.S. at 620).

In the preliminary approval order the court found the superiority element to be satisfied. Prelim. Approval Order at 7–8. The reasons for the court's preliminary approval are unchanged; thus, there is no reason for the court to depart from them here. Class certification is superior to alternative forums for the following reasons: (1) there is no evidence of existing lawsuits filed by class members against defendant raising the same or similar issues, Rodriguez

Approval Decl. ¶ 10; (2) there is a risk of obtaining smaller awards if members pursued claims individually, Mot. Approval at 14 (citing *Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013)); (3) the Eastern District of California is an appropriate forum to litigate this action because the class is comprised of California residents, asserting California law, and defendant has offices in California, including in the Eastern District, Ex. A §§ 1.5, 1.6, 4.1.

For these reasons the court affirms its preliminary order and finds the superiority requirement is met.

G.     Conclusion

Plaintiff has satisfied the requirements of Rule 23(a)–(b). Final approval of the class is appropriate. The court next considers whether notice to the class satisfies the requirements of Rule 23(e).

IV.     NOTICE TO CLASS MEMBERS

In its preliminary approval order, the court reviewed the proposed notice packet and found it conformed with due process and Rule 23(c)(2)(B). Prelim. Approval Order at 13. The proposed notice was adequate because it "describes the settlement terms, informs the class about the allocation of attorneys' fees, estimates the share each class member will receive and, once completed, will specify the date, time and place of the final approval hearing." *Id.* (citing *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126–27 (E.D. Cal. 2009)). The notice adequately explained the objection and opt-out options to recipients, *see* Ex. A § 7.5, and the court found the delivery method, by mail, also appropriate, Prelim. Approval Order at 13 (citing *Ross v. Bar None Enterp. Inc.*, No. 2:13-CV-00234-KJM-KJ, 2014 WL 4109592, at *10 (E.D. Cal. Aug. 19, 2014)) (finding mail appropriate delivery method).

As noted above, the court expressed concern that if certain class members received no notice, due to ineffective service for example, those members would not receive payment yet would release their claims. *Id.* at 12. In his current motion, plaintiff addresses these concerns by pointing to Rule 23(c)(2)(b)'s provision that actual notice is not required so long as "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort," is made. Mot. Approval at 14 (citing Fed. R. Civ. P.

23(c)(2)(b)).  Among the several cases cited by plaintiff, *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121 (9th Cir.), *cert. denied*, 138 S. Ct. 313 (2017), most directly addresses the court's fairness concern regarding class members who have not received actual notice despite plaintiff's efforts.  There, the court said:

> Rule 23 requires only the "best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through reasonable effort." . . . In other words, "[t]he rule does not insist on actual notice to all class members in all cases" and "recognizes it might be impossible to identify some class members for purposes of actual notice." . . . And courts have long employed *cy pres* remedies when some or even all potential claimants cannot be identified. . . . The notion that an inability to identify all class members precludes class certification cannot be reconciled with our court's longstanding *cy pres* jurisprudence.

*Id.* at 1128–29 (some alterations in original) (emphasis in original) (citations omitted).  *See also Rannis,* 380 F. App'x at 650 (finding conventional mail and skip-trace searches were sufficient effort to notify seven class members who ultimately remained unreached); *Lane v. Facebook, Inc*., 696 F.3d 811, 834 (9th Cir. 2012) ("If a person owns a claim, it is property, and the owner of the claim is constitutionally entitled not to have it taken from him except with reasonable notice and an opportunity to be heard.").  As long as all reasonable efforts are made under Rule 23 to notify every potential class member, the fact that plaintiff cannot demonstrate all members received actual notice does not effect a violation of those members' due process rights once the settlement is approved.  *Briseno*, 844 F.3d at 1129 ("[T]he Due Process Clause does not require actual, individual notice in all cases.").

Here, claims administrator, Simpluris, Inc., received a "Class List" from defense counsel containing names, most recent mailing addresses, social security numbers and pertinent employment information for all 75 class members.  Kline Decl., ECF No. 56-2, ¶ 6.  Mailing addresses were updated using the U.S. Postal Service's National Change of Address Database ("NCOA").  *Id.* ¶ 7.  On September 20, 2018, notice packets were mailed to all 75 class members using addresses from the class list using First Class mail or addresses updated via NCOA search.  *Id.* ¶ 8.  For packets returned as undeliverable and without forwarding addresses, Simpluris performed an advanced search or "skip trace" of these addresses utilizing "Accurit, a reputable

research tool owned by Lexis-Nexis." *Id.* ¶ 9. These advanced searches revealed three updated addresses, and Simpluris promptly resent notice packets to those addresses. *Id.* Only one notice packet ultimately was deemed undeliverable. *Id.* In addition to these efforts, plaintiff's counsel "prominently posted all settlement material and motion documents on their website." Rodriguez Approval Decl. ¶ 19. At the February 8, 2019 final approval hearing, the parties confirmed they had received no opt-outs or objections.

A class member who is unable to share in the award due to lack of actual notice will still benefit indirectly through *cy pres* distribution. *Briseno*, 844 F.3d at 1129; *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) ("Used in lieu of direct distribution of damages to silent class members, [*cy pres*] allows for . . . distribution of unclaimed funds to indirectly benefit the entire class.").

Based on plaintiff's efforts and in light of the authority governing notice requirements, the court's concerns regarding notice are satisfied. The court concludes that notice was directed in a reasonable manner to all class members who would be bound by the proposal; the notice satisfies the requirements of Rule 23(e). Next, the court reviews the legal standard for determining if a settlement agreement is fair, reasonable and adequate under Rule 23, and then the court applies that standard to the settlement agreement in this case.

V.      SETTLEMENT AND FAIRNESS

    A.      Legal Standard

When parties settle a class action, a court cannot simply accept the proposed resolution; rather it must also satisfy itself that the proposed settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. After preliminary certification and notice to the class, a court conducts a fairness hearing as it has here before finally approving any proposed settlement. *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1267 (9th Cir. 2010); Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."). The court must balance a number of factors in determining whether a proposed settlement is in fact fair, adequate and reasonable:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. This list of factors is not exhaustive, and "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). For example, where the parties negotiate a settlement agreement before a formal class certification, the court must evaluate the settlement for evidence of collusion with a "higher level of scrutiny." *In re Bluetooth Headset Products Liab. Litig.* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011).

When determining the fairness of a settlement agreement, the court must consider the settlement as a whole, rather than its component parts; the core settlement "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026; *but see In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1190 n.5 (9th Cir. 2013) (in concluding proper amount of attorneys' fees, agreement as a whole need not stand or fall on that amount as a factor). Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

B.    Discussion

The court considers each *Hanlon* factor in turn and then reviews the settlement agreement for evidence of collusion under *Bluetooth*.

1.    The Strength of Plaintiff's Case

The first *Hanlon* factor concerns the strength of the plaintiff's case. The court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of [the] litigation." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F.

15

Supp. 1379, 1388 (D. Ariz. 1989). The court in fact cannot reach such a conclusion because evidence has not been fully presented to it and typically "settlements [are] induced in large part by the very uncertainty as to what the outcome would be, had litigation continued." *Id.* Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

As described above, plaintiff brings this action under the PAGA, alleging that defendant engaged in unfair competition, failed to provide paid rest periods, failed to provide paid sick leave, failed to pay contract wages, failed to timely pay wages, failed to timely pay final wages, failed to provide legally compliant paystubs and required class members to enter into unlawful agreements. *See* Rodriguez Approval Decl. ¶ 2. Plaintiff supports these allegations with the identification of specific policies and practices used by defendant. *Id.* ¶ 3. Counsel believe plaintiff's claims to have merit based on their "consultations with Plaintiff, reviewing payroll documentation, and reviewing other documents relating to Plaintiff's employment." *Id.* ¶ 4.

Defendant opposes plaintiff's case on the merits and contends, among other things, "that its commission/draw compensation system adequately compensated employees for time spent on rest periods and during sick leave." *Id.* ¶ 7. The defense contentions represent a risk to the class that "needed to be accounted for when determining whether a settlement would or would not be more favorable than continued litigation and trial." *Id.* In light of these contentions, the parties engaged in "non-collusive, contentious and adversarial" negotiations, including a full-day mediation session before retired Judge Sabraw, a highly experienced mediator.[2] *Id.* ¶ 8. Informal negotiations, continuing under Judge Sabraw's supervision, carried over into the following week, and the parties ultimately reached a resolution by accepting a mediator's proposal. *Id.*

In reaching a resolution, plaintiff weighed the inherit risks of class action litigation against the evidence supporting his claims, which included his own testimony, defendant's management personnel and putative class members, class data, commission reports, paystubs,

---

[2] The Hon. Ronald M. Sabraw (Ret.) "was responsible for creating and building Alameda County's complex litigation department." Rodriguez Approval Decl. ¶ 8.

defendant's insurance policies, commission agreements, documents reflecting commission paid upon separation, employee handbook excerpts and other related documents. *Id.* ¶ 9. These considerations, among others, led plaintiff to conclude that "the secured and guaranteed benefit to the class under the proposed settlement is more beneficial to the class than proceeding with the litigation." *Id.*

In light of the foregoing, and the "[g]reat weight [] accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," the court finds plaintiff presents a reasonable position supporting class treatment and the strength of his claim, while the defense position was a considerable factor in compelling the parties toward an equitable resolution. Prelim. Approval Order at 10 (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

2.  The Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Throughout Trial

The court considers the second and third *Hanlon* factors together, given that both concern the judicial preference for approving a settlement rather than entertaining lengthy, expensive, and complex litigation. *Morales v. Stevco*, Inc., No. 1:09-CV-00704 AWI, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011) ("Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'") (citation omitted). The Ninth Circuit has explained "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "'[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 625).

Here, the parties have reached a reasonable voluntary agreement that will provide class members with certain substantial relief while mitigating the risk of maintaining class status through trial and avoiding delays through continued litigation, which would likely be prolonged and expensive. Defendant opposes class certification of plaintiff's claims on the merits, and

17

although plaintiff stands by the strength of his claims, he recognizes the risks in maintaining certification and prevailing without a settlement.  Mot. Prelim. Approval at 17.  Additionally, for plaintiff to overcome any potential merits or damages issues "would require significant amounts of time and resources and likely result in substantial protracted litigation through discovery, discovery motions, decertification motions, and appeals without significant likelihood of additional recovery for class members."  *Id.* at 16.  Settlement here mitigates those risks.

Therefore, this factor favors approval of the settlement.

### 3.     The Amount Offered in Settlement

The next *Hanlon* factor concerns the fairness of the amount offered in settlement. The fairness of the proposed settlement is not to be judged against "a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at 625; *see also Collins*, 274 F.R.D. at 302 (a court must "consider plaintiffs' expected recovery balanced against the value of the settlement offer") (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

In the preliminary approval order, the court noted that "the motion for preliminary approval omits any discussion of the critical question of how the settlement amount relates to the merits of the class members' individual claims."  Prelim. Approval Order at 12.  In class counsel's declaration, Mr. Rodriguez provides a detailed breakdown of maximum claim valuation estimates:

- Rest periods: $607,186.25
- Sick leave: $124,294.03
- Wage statements: $54,135.00
- Waiting time penalties: $8,366.40 per person and $267,724.80 for the class
- PAGA claims: $1,205,512.48, however after potential discretionary reductions, the maximum likely value of the PAGA claims is reduced to a range of approximately $216,992.25 to $843,858.74.

Rodriguez Approval Decl. ¶ 12.  Taken together, "the maximum likely recovery at the time the settlement was entered into if Plaintiff were successful at trial would range between

$1,293,096.86 and $1,919,963.35." *Id.* ¶ 13.  Plaintiff supports each valuation with a calculation explaining how the valuation was reached.  *Id.* ¶ 12.

The proposed settlement amount for all 75 class members is $350,000, which is approximately 14.4 percent to 21.3 percent of the maximum recovery if the class were successful in maintaining certification and at trial.  *Id.* ¶ 13.  The net recovery for each class member is approximately 9.1 percent to 13.5 percent, which equates to an average net value per class member of $2,962.36.  Plaintiff represents that "these estimated recoveries represent excellent and substantial results for the class and [are] fair and reasonable in light of the complexities in the case," *id.*, and are "well within the percentile ranges of the total available damages that have been approved in other class settlements."  Mot. Approval at 16.  Plaintiff  argues that simply because a settlement award is a fraction of the total maximum possible recovery does not make the settlement unfair or unreasonable.  *Id.* (collecting cases).  Additionally, plaintiff notes the inherent difficulties of supporting the valuation estimates "absent a prior Court or Labor Commissioner decision finding the practices were unlawful," and where the estimates could still be subject to reduction by way of the court's assessment of discretionary PAGA penalties.  *Id.* at 17.

Having reviewed the settlement agreement in aggregate and the cases cited by plaintiff, the court is satisfied that the settlement value, even if relatively small compared to the maximum possible recovery, is fair to the putative class members.  "Although a larger award was theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'"  *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

4.    The Extent of Discovery and Stage of the Proceedings

The next *Hanlon* factor concerns whether the parties had adequate information to engage in informed negotiations before reaching settlement.  "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *Linney* 151 F.3d at 1239 (citing *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

Plaintiff represents that the parties were in possession of "all necessary information" during the negotiations. Mot. Approval at 18. The parties engaged in informal investigation and formal discovery, exchanging documents, records and company policies; they also sought information from class members themselves to "determine liability and create an accurate damages model." *Id.* This information was available to and relied upon by plaintiff in evaluating the viability of the class claims and the wisdom of settlement. *Id.* Based on these representations, the court is persuaded that counsel took sufficient steps to ensure it could make an informed decision about settlement. This factor weighs in favor of approving settlement.

### 5. The Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also Barbosa*, 297 F.R.D. at 447.

Here, class counsel are experienced practitioners who have successfully litigated many similar cases. Galen Shimoda has been practicing in the area of complex class action litigation since 2003, and Justin Rodriguez has similarly been practicing in class action litigation since 2011. Shimoda Fees Decl., ECF No. 54-1, ¶ 11; Rodriguez Fees Decl., ECF No. 54-2, ¶ 4. Class counsel have litigated numerous class action cases in California state and federal courts, "including up to certification, settlement, preliminary and final approval, and disbursement of monies, and have been found to [] satisfy the adequacy requirements for class counsel." Shimoda Fees Decl. ¶ 11; *see also* Rodriguez Fees Decl. ¶ 4. Based on their collective experience, class counsel believe the "settlement is fair and reasonable in light of the complexities of the case, the uncertainties of class certification and litigation, and the secured benefit to the class." Mot.

Approval at 19.  Given the experience of counsel and their opinion on the fairness of this settlement agreement, this factor favors approving the settlement.

### 6. Governmental Participant

This factor does not apply because no government entity participated in the case. *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 455 (C.D. Cal. 2014) (factor does not apply in absence of government participant).

### 7. The Reaction of Class Members to the Proposed Settlement

*Hanlon* further directs the court to examine any objections or opt-outs from class members.  "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529.  Where there are no objections, the presumption is particularly strong. *Lo v. Oxnard European Motors*, LLC, No. 11-1009, 2012 WL 1932283, at *2 (S.D. Cal. May 29, 2012) (noting "the fairness of the terms of the settlement is bolstered by the fact that no objections were made").

As plaintiff indicates in his motion, and the court confirmed at the final approval hearing, there have been no opt-outs or objections registered.  Mot. Approval at 2, 7, 9, 13, 19.  As such, this factor weighs in favor of approving the settlement.

### 8. The Possibility of Collusion

Where the parties negotiate a settlement agreement before a formal class certification, the court must evaluate the settlement for evidence of collusion with a "higher level of scrutiny." *Bluetooth*, 654 F.3d at 946.  "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947.  A few such signs may include: (1) a disproportionate distribution of the settlement to counsel; (2) a "clear-sailing" provision, under which the defendant agrees not to oppose an attorneys' fee award up to a certain amount, *id.*; and (3) when the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund, *id.*

The court considers the parties' extensive formal and informal discovery as well as the lengthy mediation process, both formal and informal, facilitated by Judge Sabraw, as substantial evidence of the lack of collusion. Mot. Approval at 2.

Next, turning to the first *Bluetooth* factor, class counsel seek an award of attorneys' fees of $87,500, which represents twenty-five percent of the $350,000 gross settlement amount. Mot. Fees at 1. The propriety of fees is discussed in more detail below; however, for purposes of collusion the court is satisfied that the proposed distribution to counsel is not disproportionate, and is within a percentage range the Ninth Circuit deems acceptable. *Hanlon*, 150 F.3d at 1029 (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

As to the second *Bluetooth* factor, the court previously raised concerns regarding defendant's agreement not to oppose any motion for attorneys' fees. Prelim. Approval Order at 12. The court required additional information in order to make a reasonableness determination. *Id.* at 13. Although defendant agreed not to oppose class counsel's request for attorneys' fees, those fees will come from the settlement fund, mitigating the concern regarding defendant's agreement. *Cf. Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) (collusion generally inferred from a "clear-sailing" provision where attorneys' fees are paid on top of the settlement fund). Thus, the second sign weighs in favor of finding no collusion.

As to the third sign, the defendant does not receive any fees not awarded in reversionary payments. The settlement agreement provides that all funds are either distributed to class members on a pro rata basis or, if the amount is too small to warrant pro rata distribution or if checks are not cashed, those funds will be distributed to the *cy pres* beneficiary. *See* Mot. Approval at 2. On the current record, the court does not find evidence of collusion. The lack of such evidence weighs in favor of approving the settlement.

In sum, the court finds the settlement agreement is "fair, reasonable, and adequate" and consequently satisfies the fairness requirements of Rule 23(e).

VI.     ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

In the following sections, the court addresses whether to grant class counsel's request for attorneys' fees, costs, an incentive award and administrator's costs.

A.     Request for Attorneys' Fees

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even when the parties have agreed on an amount, the court must award only reasonable attorneys' fees. *Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Courts should employ the lodestar method where, for example, awarding 25 percent of a "megafund" would yield windfall profits for class counsel in light of the hours spent on the case. *Id.* But here, where the "benefit to the class is easily quantified" in a common-fund settlement, the court can employ the percentage-of-recovery method. *Id.* The Ninth Circuit has held that the court may, but is not required to, compare the lodestar and the percentage benchmark to determine if requested attorneys' fees are inappropriately high or low. *Fischel v. Equitable Life Assurance Society of the United States*, 307 F.3d 997, 1007 (9th Cir. 2002) (finding no error where district court awarded fees under lodestar method and failed to compare lodestar with twenty-five percent benchmark). Overall, the goal is to produce a reasonable result. *Bluetooth*, 654 F.3d at 942.

Here, the court considers the reasonableness of class counsel's request for $87,500 in attorneys' fees using the percentage-of-recovery method and then conducting a crosscheck using the lodestar method.

1.     Percentage of Fee Recovery

In the Ninth Circuit, the twenty-five percent benchmark for percentage-of-recovery awards may be adjusted up or down. *Hanlon*, 150 F.3d at 1029; *Ross v. U.S. Nat'l Bank Ass'n*, No. 07–02951, 2010 WL 3833922, at *2 (N.D. Cal. Sept. 29, 2010). Factors that may justify departure from the benchmark include: (1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience, and skill; and

(5) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). "The 25% percent benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.* at 1048. "[T]he exact percentage varies depending on the facts of the case," and one court observed that in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491 (E.D. Cal. 2010); *Williams v. Centerplate, Inc*., No. 11–2159, 2013 WL 4525428, at *7 (S.D. Cal. Aug. 26, 2013) (concluding an award of attorneys' fees in the amount of thirty percent of the common fund or $195,000 was reasonable); *In re Activision Sec. Litig*.,723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (noting "nearly all common fund awards range around 30%").

Here, as noted, class counsel request an attorneys' fee award of twenty-five percent, or $87,500, which is the benchmark proportion of the settlement amount. Mot. Fees at 2. The court finds the fee request reasonable because counsel obtained an early settlement and favorable result per class member, while avoiding increased costs and the uncertainties of litigation. *See Vasquez*, 266 F.R.D. at 492 (result favorable where 56 employees were to receive a recovery of $2,600 per employee); *see also Ching v. Siemens Indus., Inc*., 11-CV-04838-MEJ, 2014 WL 2926210, at *2 (N.D. Cal. June 27, 2014) (noting "the overall result and benefit to the class from the litigation is the most critical factor in granting a fee award"). Additionally, class counsel handled the case on a contingent fee basis, Shimoda Fees Decl. ¶ 3, and courts have long recognized the public policy of rewarding attorneys for accepting contingent representation in appropriate cases. *See In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases."). The experience of class counsel also supports a twenty-five percent award. The two lead attorneys who represent the class, Galen Shimoda and Justin Rodriguez, together have nearly 25 years of experience, largely devoted to class action employment cases, and have successfully litigated a number of similar cases. *See* Shimoda Fees Decl. ¶ 11; Rodriguez Fees

Decl. ¶ 4.  Finally, class counsel's thorough and skillful representation throughout the mediation process further supports a twenty-five percent award.  Mot. Fees at 12; *see also* Mot. Approval at 4.  In light of these considerations, class counsel have adequately supported their request for a twenty-five percent fee recovery.

## 2.    Lodestar Cross-Check

The Ninth Circuit encourages courts to guard against an unreasonable fee by cross-checking their calculations against a second method.  *Bluetooth*, 654 F.3d at 944.  In particular, the lodestar method can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate."  *Id.* at 945 (internal citations omitted).  To calculate the lodestar figure, a court multiplies "the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *Id.* at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).  When a court uses the lodestar as a crosscheck of a percentage claim of fees, it need only make a "rough calculation."  *Schiller*, 2012 WL 2117001, at *22.  "Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors."  *Bluetooth*, 654 F.3d at 941–42 (citing *Hanlon*, 150 F.3d at 1029).  Those factors include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'"  *Id.*  "Foremost among these considerations, however, is the benefit obtained for the class."  *Id.* at 942 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)).

Here, class counsel represent that their lodestar is $95,970.  Mot. Fees at 5.  To reach that amount, counsel applied the rate of $600 per hour for Mr. Shimoda (23.9 hours), $450 per hour for Mr. Rodriguez (167.9 hours), $270 per hour for associate Erika Sembrano (2.5 hours), and $125 per hour for associate Brittany Berzin (43.2 hours).   Shimoda Fees Decl. ¶¶ 14, 18, 20–21; Rodriguez Fees Decl. ¶ 9.  Counsel assert that because the requested fee of $87,500 represents the application of a negative multiplier of 0.91 as of September 25, 2018, the requested fee is inherently reasonable.  Mot. Fees at 7 n.3 ("[T]he fact that counsel are generally awarded

multipliers of their lodestar, the absence of a positive multiplier in this case demonstrates the reasonableness of the fee selected."). Because counsel's requested fee is less than the lodestar cross-check value, and in light of the record as a whole, the court accepts counsel's rates as reasonable. *See, e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) ("Because the lodestar cross-check revealed a multiplier of 0.59, the court is satisfied that counsel's requested fee award is not unreasonable.").

a) <u>Hours</u>

Class counsel report having spent a total of 237.5 hours on this matter in order to reach the settlement. Mot. Fees at 5. The individual breakdown of hours spent and hourly rates is reflected above. Class counsel have also provided an itemized list of timekeeper activity and the corresponding rates for each activity. *See* Shimoda Fee Decl., Ex. A. Class counsel assert that "the time reported . . . was devoted to necessary and worthwhile tasks, and was calculated at reasonable billing rates." Mot. Fees at 5. While the bulk of the hours billed came from counsel charging higher hourly rates than those with lower rates, those hours were nonetheless reasonable given the experience necessary to litigate complex wage and hour class action suits. Therefore, having reviewed counsel's time allocation in this matter, the court is persuaded that the hours spent are reasonable.

b) <u>Hourly Rates</u>

A "district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). That determination is not made "by reference to rates actually charged the prevailing party," but instead to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.*; *see also Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) (citing attorney's previously approved rates to support reasonableness of a modestly larger rate).

As described above, class counsel reach the lodestar figure by multiplying the hours of each attorney by their corresponding rate—$600 per hour for Mr. Shimoda (23.9 hours),

$450 per hour for Mr. Rodriguez (167.9 hours), $270 per hour for associate Erika Sembrano (2.5 hours), and $125 per hour for associate Brittany Berzin (43.2 hours)—then adding the total associated with each attorney to reach the lodestar figure of $95,970. The fee requested by counsel, however, $87,500, represents the negative multiplier of 0.91 noted above.

Having reviewed the class counsel's declarations as to the prevailing rates in the region, the court is satisfied that based on counsel's experience litigating wage and hour class action cases, the rates charged are reasonable. *See* Shimoda Fees Decl. ¶ 18; Rodriguez Fees Decl. ¶ 9; *see also* Clark Fees Decl., ECF No. 54-3.

c) Lodestar Multiplier

"Once the lodestar has been calculated, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016) (internal quotations omitted) (citing *Bluetooth*, 654 F.3d at 941–42). Because class counsel request a fee amount of $87,500, which represents a negative multiplier of 0.91 from the lodestar amount of $95,970, and the court finds the $87,500 amount to be a reasonable twenty-five percent rate given the total class award of $350,000, the court need not and does not apply a multiplier to adjust the requested amount, given the reasonableness of the fee request. *Chun-Hoon*, 716 F. Supp. 2d at 854 ("This resulting multiplier of less than one, (sometimes called a negative multiplier) suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel.").

For these reasons class counsel will be awarded attorneys' fees in the amount of $87,500.

B. Request for Costs

The court also must determine an appropriate award of costs and expenses. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, the judge has to step in and play surrogate client." *FACTA*, 295 F.R.D. at 469 (quoting *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)). Here, class counsel seek reimbursement of $7,688.74 in costs. Mot.

Fees at 15.  Counsel aver this amount is less than the $10,000 provided for in the settlement and class notice.  *Id.*  The costs include: "postage charges, photocopying and printing expenses, travel expenses, mediation expenses, and research and filing expenses, among other expenses necessarily incurred to properly litigate this case."  *Id.*  Upon review, the court finds the costs requested to be reasonable.

C.  <u>Incentive Award</u>

Incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  While such awards are fairly typical in class action cases, *id.* at 958, the decision to approve such an award is a matter within the court's discretion, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

In determining whether to approve an incentive award, courts may consider the following factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Various courts in this circuit, including this court, have adopted the *Van Vranken* factors.  *See, e.g., Zakskorn v. Am. Honda Motor Co., Inc.*, 2:11-CV-02610-KJM, 2015 WL 3622990, at *17 (E.D. Cal. June 9, 2015); *Greater Los Angeles Agency on Deafness, Inc. v. Krikorian Premiere Theatres*, LLC, CV 13-7172 PSG (ASx), 2015 WL 12656271, at *4 (C.D. Cal. Feb. 5, 2015); *Walsh v. Kindred Healthcare*, C 11-00050 JSW, 2013 WL 6623224, at *4 (N.D. Cal. Dec. 16, 2013); *Dubeau v. Sterling Sav. Bank*, 1:12-CV-01602-CL, 2013 WL 4591034, at *4 (D. Or. Aug. 28, 2013); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009).  One California appellate court has adopted the *Van Vranken* factors as well.  *In re Cellphone Fee Termination Cases*, 113 Cal. Rptr. 3d 510, 522 (2010).  The court evaluates plaintiff's request for a $20,000 incentive award in light of the above enumerated factors.

Plaintiff argues a $20,000 incentive award is justified because he undertook the financial risk of being held personally liable to defendant if an adverse judgment were rendered against him. Mot. Fees at 17. Plaintiff has been involved in all stages of the litigation, including investigation of claims, preparation of complaints, production of evidentiary documents, inclusion in the discovery and pleading process and involvement in negotiations. *Id.* at 16. He has also contributed to the analytical development of the case, and has "turned down a settlement offer at a critical point in the litigation to obtain a better class recovery." *Id.* at 17. Plaintiff is also subject to a waiver of claims much broader than the general class members. *Id.*(explaining that plaintiff waived several individual, non-wage and hour claims he believed were viable). Finally, plaintiff asserts he should benefit from an additional "unique factor" created by the "factual complexity and specificity that was required of Plaintiff in assisting with the motion to remand." *Id.* at 16 (detailing onerous process of identifying the factual predicates to every claim in order to prove damages were below the jurisdictional threshold). Plaintiff has previously provided a declaration detailing his involvement in the litigation. *See* Acosta Prelim. Approval Decl., ECF No. 33.

While the court recognizes plaintiff's personal involvement and sacrifice on behalf of the class, the court finds the extent of his role and exposure does not warrant a $20,000 award when viewed in light of the *Van Vranken* factors. First, despite the court's cautionary warning that approval of the incentive award would require "substantial justification," Prelim. Approval Order at 11, plaintiff provides no supplemental declaration in support of the present motions; rather, the court is left to rely on the same declaration submitted in support of plaintiff's earlier motion for preliminary approval, Acosta Prelim. Approval Decl. Second, at the February 8, 2019 motion hearing, when asked about the purported risk of personal liability plaintiff may have sustained if an adverse judgment had been rendered against the class at trial, counsel did not identify any authority suggesting this action is subject to a statutory or equitable fee-shifting provision that would increase plaintiff's risk, particularly in light of the contingency nature of counsel's representation. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("Although the common fund doctrine does not permit the *shifting* of the burden of the litigation expenses to the losing party, it does permit the burden to be *shared* among those who

are benefited by the litigant's efforts.") (emphasis in original); *Staton*, 327 F.3d at 965

("Generally, litigants in the United States pay their own attorneys' fees . . . however, Congress

has legislated that in certain cases prevailing parties may recover their attorneys' fees from the

opposing side."). Finally, when asked at hearing how many hours plaintiff personally invested in

this action, counsel estimated between twenty-five and forty hours, which is not an extraordinary

amount. *Compare Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (awarding

$15,000 incentive award where class plaintiff spent 271 hours on his duties over a period of six

years), *and Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding $20,000

each to two class plaintiffs who spent in excess of 500 hours in the litigation), *with Torchia v.*

*W.W. Grainger, Inc.*, 304 F.R.D. 256, 281 (E.D. Cal. 2014) (reducing $15,000 incentive request

to $7,500 where class plaintiff expended 64 hours), *and Krzesniak v. Cendant Corp.*, No. C 05-

05156 MEJ, 2008 WL 4291539, at *3 (N.D. Cal. Sept. 18, 2008) (reducing incentive award to

$1,500 where plaintiff's participation was only "slightly higher" than the two and five hour

increments expended by plaintiffs in comparable case).

As plaintiff concedes, the incentive award of $20,000 is larger than customary.

Mot. Fees at 17. The $20,000 request, which is roughly five percent of the total settlement value

($20,000 ÷ $350,000 = 0.0571), is beyond the amount traditionally deemed reasonable in the

Ninth Circuit. *See Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL

7454183, at *10 (N.D. Cal. Nov. 23, 2015) ("Many courts in the Ninth Circuit have also held that

a $5,000 incentive award is 'presumptively reasonable.'"). Such an award would also be greater

than those customarily granted in this district. *See, e.g., Ontiveros*, 303 F.R.D. at 366 (granting

$15,000 incentive award as more proportional to the $3,700 average award of other individual

class members); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 463 (E.D. Cal. 2013)

(granting $2,500 award, reflecting only .62 percent of the total settlement fund); *Vasquez*, 266

F.R.D. at 490 (finding $5,000 representative payment to be fair and reasonable). Similarly, other

courts throughout the circuit have adjusted disproportionately high requested incentive awards.

*See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (reducing

award to $15,000 where proposed $20,000 award was nearly four times the amount deemed

presumptively reasonable by that court); *Sandoval v. Tharaldson Employee Mgmt., Inc*., No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (finding $12,500 incentive request excessive under the circumstances of the case and reducing award to $7,500).

In light of these considerations, the court finds that an award of $10,000 more appropriately rewards plaintiff for the risk borne and effort expended throughout this litigation, while also guarding against an award overly disproportionate to the class. Despite this reduction, plaintiff will still be fairly rewarded for his efforts: $10,000 represents approximately two percent of the total award ($10,000 ÷ $350,000 = .0285) and an hourly rate of $250 ($10,000 ÷ 40-hour estimate = $250 per hour). These rates, comparatively speaking, are reasonable if not more than reasonable under the circumstances of this case. *See Ontiveros*, 303 F.R.D. at 366; *Monterrubio*, 291 F.R.D. at 463. Plaintiff is granted an incentive award of $10,000.

D.     Class Administrator Fee

Plaintiff also asks the court to approve costs to the claims administrator, Simpluris, Inc. The court preliminarily approved $10,000 being allocated to complete administrative tasks, but noted that amount is unusually high for a class of this size and for a case geographically restricted to only California. Prelim. Approval Order at 12. Plaintiff now represents that the actual costs necessary to compensate Simpluris through conclusion in this matter is $5,134. Given the administrative functions executed by Simpluris, *see* Kline Fees Decl., ECF No. 54-4, the court finds the $5,134 in costs to be comparable to the size of the class, and thus reasonably necessary. *See, e.g.*, *Vasquez*, 266 F.R.D. at 484 (approving $25,000 administrator fee awarded in wage and hour case involving 177 potential class members). The administrator fee of $5,134 is approved.

E.     *Cy Pres* Distribution

Because most class action settlements result in unclaimed funds, a plan is required for distributing those funds. *Six (6) Mexican Workers*, 904 F.2d at 1305. The method of *cy pres* distribution allows unclaimed funds to benefit the entire class, albeit indirectly. *Id.* at 1305. Any award distributed under the *cy pres* doctrine must qualify as "the next best distribution" to giving

31

the funds directly to the class members. *Dennis*, 697 F.3d at 865. "Not just any worthy charity will qualify as an appropriate *cy pres* beneficiary"; there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiary." *Id.* A *cy pres* distribution is an abuse of discretion if there is "no reasonable certainty" that any class member would benefit from it. *Id.*

In the court's preliminary approval order, the court approved the following *cy pres* provision: "If class members do not cash their settlement checks within 180 days of receiving them, half of those sums will be distributed to the State Treasury and half will go to the Sacramento Voluntary Legal Services Program Employment Law Clinic[3] as the *cy pres* beneficiary." Prelim. Approval Order at 11. Here, the final agreement slightly modifies the distribution scheme originally proposed:

> For any residue from settlement checks that were not cashed within one hundred and eighty (180) days of issuance, this amount will be paid out pursuant to Code of Civil Procedure section 384(b), in the following manner: (a) 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund; (b) 25% to the State Treasury for deposit into the Equal Access Fund of the Judicial Branch; and (c) 50% to the Sacramento Voluntary Legal Services Program Employment Law Clinic as the *cy pres* beneficiary.

Mot. Approval at 6 (citing Ex. A §§ 5.6, 7.9).

Although plaintiff does not fully brief the modification, the court is nonetheless satisfied that there is a "driving nexus between the plaintiff class and the *cy pres* beneficiary" given the nature of this suit and that the putative class is geographically confined to California. *See* Mot. Approval at 14 ("[T]he class is composed of individuals working in California."). On that basis, the court approves the *cy pres* distribution scheme.

/////

/////

---

[3] "The Voluntary Legal Services Program of Northern California provides services to clients who need assistance with legal problems related to their current or former employment. These legal problems include the denial of unemployment insurance benefits, wage and hour issues, discrimination or sexual harassment, and wrongful termination. VLSP does not provide any advice or assistance with Workers' Compensation, pensions, or severance packages." Services We Offer, Voluntary Legal Services Program, http://www.vlsp.org/services-we-offer/#4.

VII.   CONCLUSION

        In conclusion, the court APPROVES the class settlement as follows:

1. The court CERTIFIES the class defined above;

2. The court GRANTS final approval of the settlement;

3. The court AWARDS an incentive payment of $10,000 to the named plaintiff, Jared Acosta;

4. The court APPROVES the *cy pres* distribution as proposed by the parties;

5. The court AWARDS administration costs in the amount of $5,134 to the settlement administrator Simpluris, Inc.;

6. The parties and the settlement administrator shall perform their respective obligations under the terms of the settlement agreement;

7. The court APPROVES attorneys' fees in the amount of $87,500; and

8. The court APPROVES reimbursement of costs in the amount of $7,688.74.

This order resolves ECF Nos. 54 and 56.

     IT IS SO ORDERED.

DATED:  November 14, 2019.

_____
UNITED STATES DISTRICT JUDGE